## BOUTON v. CARSON.

No. 5404.   Opinion Filed October 5, 1915.

(152 Pac. 131.)

1.   APPEAL AND ERROR — Assignments of Error — Sufficiency. Assignments of error contained in the petition in error which are so indefinite as not to point out the errors complained of cannot be made the basis for a different assignment of error in the brief to point out the alleged error.

2.   APPEAL AND ERROR — Instructions — Request — Exceptions. Where the court has given general instructions to the jury which are not excepted to, it is not ground for reversal that it did not give a special instruction when it is not requested to do so.

3.   APPEAL AND ERROR—Change of Contention.  A party cannot try his case in the trial court on one theory, and then ask a

reversal of the judgment in this court on a theory not presented to the trial court and not raised by the pleadings.

4. **APPEAL AND ERROR—Verdict—Evidence.**  Where the verdict of the jury is supported by evidence, and approved by the trial court in an action at law, this court will not review it.

5. **APPEAL AND ERROR—Harmless Error—Examination of Witnesses.**  While it is not proper to ask a witness, on rebuttal, if the testimony of another witness is true, yet this is harmless error, unless it appears from the record that such question has probably resulted in a miscarriage of justice.  Rev. Laws 1910, sec. 6005.

(Syllabus by Devereux, C.)

### Error from County Court, Kay County;
### Claud Duval, Judge.

Action by J. E. Carson against H. E. Bouton.  Judgment for plaintiff, and defendant brings error.  Affirmed.

This was an action to recover commissions alleged to be due the plaintiff for the sale of lands belonging to the defendant below.  The petition alleged, in substance, that the defendant was the owner of certain land in Kay county (describing it), and that the defendant agreed to pay plaintiff the customary commissions if he could sell it, the price being fixed at $8,500; that plaintiff found and produced one Linch as a purchaser ready, willing, and able to purchase the property, and that the defendant sold the property to Linch for the sum of $8,000; that the plaintiff was the procuring cause of the sale to Linch, and was thereby entitled to the usual and customary commission, which was $225, and prayed judgment for that sum.

To this petition the defendant answered:

"Defendant admits that he was the owner of the land described in the plaintiff's petition; that he listed it for sale with him by written contract as pleaded in plaintiff's petition; and that he sold it to Perry C. Linch for

$8,000.00 at or about the time pleaded in plaintiff's petition, and denies each, every, and all of the other allegations in said petition contained.

"Further answering, defendant states that he had listed said premises with the firm of Hall, Cullen & Hall, a firm of real estate men, about one month prior to the listing of said premises with the plaintiff; that the fact of the listing of said premises for sale with the said firm was well known to the plaintiff at the time defendant listed said premises with the plaintiff; that said firm of Hall, Cullen & Hall had produced said customer, Perry C. Linch, for said premises before they were listed with said plaintiff for sale, and that shortly after the listing of said premises with the plaintiff the said firm of Hall, Cullen & Hall completed their negotiations with said Linch and did effect the sale of said premises to said Linch for the said sum of $8,000; that immediately or soon after the making of the sale of the said premises to said Linch the defendant paid to the said firm of Hall, Cullen & Hall the commission which he had agreed to pay them, to wit, the sum of $150."

There was evidence on behalf of the plaintiff which, if believed by the jury, supported the allegations of the petition and showed the defendant had agreed to sell the land for $8,000, instead of $8,500, and evidence on behalf of the defendant which, if believed, showed that the sale of the land was made by Hall, Cullen & Hall, as set up in the answer, and there was also evidence that the defendant below had paid a commission of $150 to Hall, Cullen & Hall, with the understanding that, if he was required to pay the plaintiff any commission, they would return it. On cross-examination the plaintiff testified:

"Q. Did you do anything towards closing this deal on the day it was closed, other than what you told Mr. England in your direct examination? A. I had Mr. Linch up there and then Mr. Bouton. Q. Was that prior

to this time? A. No, sir; they were both there that day. Q. In the afternoon? A. Yes, sir. Q. Did you have them there together? A. No, sir. Q. You never did bring them face to face? A. No, sir. Q. You never did tell Bouton who the prospective purchaser was? A. No, sir; I did not. Q. You never did tell him that you had Perry C. Linch as a prospective buyer of his farm? A. No, sir. Q. You kept the two men separated all the time? A. No, sir; I didn't keep them separate. Q. They were separate? A. They lived in a half mile of each other. Q. Which one were you representing, Bouton or Linch? A. Both. Q. Bouton had listed this farm with you at $8,000? A. Yes, sir. Q. And you were representing Mr. Bouton? A. I had his farm listed. Q. You told Linch to hold off awhile and he would get it cheaper. A. No, sir. Q. What did you say about it? A. I said I thought it was high. Q. You never did tell Bouton that Linch was your prospective buyer? A. I told him I had a man to pay him $8,000 in cash, and I would go and get him and he would be back in a half hour, but he never came. Q. You never told him it was Linch? A. I didn't have to."

On rebuttal, and in order to contradict some of the evidence of the defendant, the following question and answer were admitted over the objection of the defendant:

"Q. In Mr. Bouton's deposition which was just read to the jury Mr. Bouton says: 'Mr. Carson had never procured such an offer from any one for the land, so far as I am informed.' Is that statement true? (Objected to as incompetent, irrelevant, and immaterial. Objection overruled. Exception.) A. No, sir."

The defendant below did not request any instructions, nor except to the instructions given. The jury found a verdict for the plaintiff, and the defendant brings the case to this court by petition in error and case-made, and assigns the following errors:

(1). That the court erred in overruling the motion of the plaintiff in error for a new trial.

(2) That the verdict in said cause is contrary to law.

(3) That the court erred in the admission of certain evidence which was incompetent, irrelevant, and immaterial over the objection of the defendant (the plaintiff in error), to the admission of which said testimony the defendant then and there duly excepted.

(4) That the court erred in excluding testimony offered by plaintiff in error, which was competent and relevant to his defense, to the exclusion of which testimony the plaintiff in error then and there duly excepted.

(5) That the jury did not follow the court's instructions in said cause.

In the brief the following are the only assignments set out:

"First. The verdict in said cause is contrary to law. The evidence conclusively shows that the defendant in error, who was a real estate broker, was disloyal to his principal, and sought to obtain the place for a purchaser at as small a price as possible, rather than to get all the money he could from the sale of the place for his principal.

"Second. The defendant in error was not the procuring cause of the sale.

"Third. The court erred in permitting the defendant in error to answer a question passing upon the truthfulness of plaintiff in error's testimony; that was a question for the jury, and not for the defendant in error."

*W. B. Clark* and *L. A. Maris,* for plaintiff in error.

*William H. England,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The first assignment of error contained in the brief is not available to the plaintiff in error in this court. He did not plead that Carson had been unfaithful to his trust, nor did he request any instruction on this question. The record shows that the defense in the court below was on the theory that Carson had not effected the sale of the land, but that this was done by Hall, Cullen & Hall, and for this reason the defendant was not liable, and, as far as we can gather from the record, the question now presented was never presented to the trial court or passed on by it, but is raised in this court for the first time. It is true that one of the grounds in the motion for a new trial is that the verdict is contrary to law, but no such ground for a new trial is provided for by our statute. Neither the motion for a new trial nor the assignments of error contain the statutory ground for a new trial for errors of law occurring at the trial and duly excepted to. In *Mooney v. First State Bank of Washington*, 48 Okla. 676, 149 Pac. 1173, it is held:

"An assignment * * * to effect 'that said judgment is contrary to law' limits the inquiry to: On the pleadings and findings, was the proper judgment rendered?"

In *Commerce Trust Co. v. School District*, 47 Okla. 111, 147 Pac. 303, it is held:

"Assignments of error contained in the petition in error which are so indefinite * * * as not to point out the errors complained of, and do not direct the court's attention to any facts showing cause for reversal, cannot be made the basis for different assignments [of error] in the brief that would be sufficient to point out the alleged errors."

In our opinion, therefore, this assignment of error is first presented in the brief, and there is nothing in the record to show that it was properly assigned in the petition in error, or that it was ever presented to the trial court.

In *Clark v. Farmers' State Bank,* 48 Okla. 592, 149 Pac. 1189, it is held:

"There is no rule of this court better settled than that errors not raised in the trial court will not be considered on appeal, when they do not go to the jurisdiction of the court."

See, to the same effect, *Wattenbarger v. Hall,* 26 Okla. 815, 110 Pac. 911; *Harris v. First National Bank,* 21 Okla. 189, 95 Pac. 781. In *Railway Co. v. McCartny,* 96 U. S. 258, 24 L. Ed. 693, in an action for damages for delaying a shipment of cattle, the defense was that it was impossible to ship the cattle by reason of a shortage of cars. Afterwards the railroad attempted to set up that the delay in the shipment was on account of the Sunday laws, but the court said, in answering this contention:

"The question made by the company upon the Sunday law of West Virginia does not, in our view, arise in this case. We have already shown that the defendant proved upon the trial that it was impossible to forward the cattle on Sunday, for want of cars. And it is fairly to be presumed that no other reason was given for the refusal at that time. It does not appear that anything was then said as to the illegality of such a shipment on the sabbath. This point was an afterthought, suggested by the pressure and exigencies of the case."

Again, if the defendant wished this theory of his case to be presented, he at least should have asked an instruction covering this point. In *Chicago Live Stock Com. Co. v. Fix,* 15 Okla. 37, 78 Pac. 316, it is held that,

where the court has given general instructions to the jury on the law of the case, it is no ground for reversal, if the court failed to give special instructions, unless it was requested to do so. See, also, *Robinson v. Territory,* 16 Okla. 241, 85 Pac. 451; *Moore v. O'Dell,* 27 Okla. 194, 111 Pac. 308.

The question therefore is not before us whether, under the evidence above set out, Carson was guilty of such conduct as would prevent him from recovering, but we may remark that the facts are very different from those in *Plotner v. Chillson,* 21 Okla. 224, 95 Pac. 775, 129 Am. St. Rep. 776, and *Skirvin v. Gardner,* 36 Okla. 613, 129 Pac. 729, because in each of these cases, the agent, without the knowledge of his principal, received commissions from the purchaser.

The second assignment of error is that the defendant in error was not the procuring cause of the sale. In *Nation v. Harness,* 33 Okla. 630, 126 Pac. 799, it is held:

"When property has been listed for sale with different real estate agents, the agent who induces the seller and purchaser to enter into the contract is entitled to the commission, though another agent may have first brought the parties together."

There was evidence in the record to support the verdict, and, this being an action at law, we cannot review the finding of the jury, where there is evidence to support it.

The last assignment of error complains of permitting the defendant in error to testify that a statement made by the plaintiff in error in his testimony was not true. The only case on this subject cited by either side is *Huff v. Territory,* 15 Okla. 376, 85 Pac. 241. In that case the objectionable questions were:

"Q. If Mr. Steve Tucker swore upon this stand that you parties all went out there from Cheyenne to this round-up about one o'clock, was that true or false? A. I don't know, sir; I did not go from Cheyenne. * * * Q. If he swore here upon this stand and in this court that he, Steve Tucker, and you and John Reed and Joe Miller and Jeff Chenoworth and Ed Woods went out to the round-up together, was that true or false? A. I did not go from Cheyenne with him."

It does not appear from the report of that case that this was rebuttal evidence, but, however that may be, the court did not reverse the case, because no exception was saved. The court, however, does very properly, in our opinion, animadvert on this style of examination, and we can very well see, under some sircumstances, it might be reversible error. But is it so in the case at bar? In the Huff Case it plainly appears that counsel were insisting that the witness should testify that Tucker swore falsely when he testified that the witness was with him on a certain occasion. In the case at bar the record does not disclose any heat or improper conduct on the part of the counsel, but he asks only if a certain statement made by the defendant is true. This is very different from the facts in the Huff Case, where it is evident that counsel was trying to force the witness to say that another witness had committed perjury. While the question was improper, and such manner of examination is not to be commended, we cannot say that in the instant case it was of such a nature as to require a reversal of the judgment. Rev. Laws 1910, sec. 6005.

We therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.