**BURKHART et al. v. ROGERS et al.**

No. 18055. Opinion Filed Nov. 20, 1928.

Rehearing Denied Jan. 5, 1929.

Leathy, MacDonald & Files, Holcombe & Lohman, Walter L. Gray, and John Barry, for plaintiffs in error.

Johnson & Johnson, for defendants in error.

HEFNER, J. This appeal is prosecuted from the judgment of the district court of Osage county admitting the will of Rita Smith to probate.

W. E. Smith, the husband of Rita Smith, first married a Cherokee Indian, and by this union he had one child, Ella Rogers, the defendant in error herein. His second wife was Minnie Kyle Smith, and after her death he married her sister, Rita Kyle.

On the 2nd day of September, 1921, W. E. Smith and Rita Smith executed a will which is as follows:

"Know All Men By These Presents:

"That we, W. E. Smith and Rita Smith, Osage allottee No. 284, husband and wife, of Fairfax, Osage county, Oklahoma, both being of lawful age and of sound mind and memory, do make, publish and declare this instrument to be jointly as well as severally, our last will and testament, hereby revoking all former wills.

"1. All just debts and funeral expenses shall at all times be fully paid.

"2. We thereafter desire that all property, real as well as personal, of which we, or either of us, may be possessed at the time of the decease of either of us, shall pass to the survior in fee, and to be and re-remain his or her absolute property.

"3. In the event of our simultaneous death, and that neither of us survive the other, we give, devise, and bequeath our property and estate as follows, to wit: W. E. Smith gives, devises and bequeaths all the property and estate of which he dies seized or possessed to his father, Thomas Smith, and Rita Smith gives, devises, and bequeaths the sum of five and no/100 dollars to her sister, Mollie Burkhart, and all the rest, remainder and residue of the property and estate of which she dies seized or possessed she gives, devises, and bequeaths to her half-sister, Grace Bigheart, or her bodily heirs, in the event she is not living.

"4. In the event that W. E. Smith dies before the death of said Rita Smith, said Rita Smith further gives, devises and bequeaths the sum of five and no/100 dollars to her sister Mollie Burkhart, and all the rest, remainder and residue of the property and estate of which she dies seized or possessed to her said half sister Grace Bigheart, or her bodily heirs in the event she is not living.

"In witness whereof we have hereunto set our hands this 2nd day of September, 1921."

Rita Smith died on the 10th day of March, 1923, and W. E. Smith died four days later.

When the above will was executed, W. E. Smith did not disclose to Rita Smith that he had a daughter, Ella Rogers, by his first wife. The will does not show on its face an intention to disinherit her, and since this intention is not so shown, she takes as a forced heir one-half of the estate, or the same part she would have inherited had no will been executed.

If W. E. Smith had died first, Ella Rogers would have inherited one-half of his estate

under the statute as a forced heir, and Rita Smith would have taken the other half. The will, therefore, was of no advantage to her, because she could take no greater interest under it than she inherited under the statute. As to Rita Smith, the will was therefore ineffective.

It is urged that this is a joint and reciprocal will and the makers intended the will should be effective as the will of both or neither; and that since the will was not effective as to Rita Smith in event W. E. Smith preceded her in death, it could not be effective as to her in event she preceded him in death.

Joint and reciprocal wills have not always been but are now generally sustained by the courts. A mutual or reciprocal will is one in which two or more persons make mutual provisions in favor of each other. There can be no doubt but that the will under consideration is a mutual or reciprocal will, because it directed that all property of which either was possessed at the time of death should pass to the survivor in fee and to be and remain his or her absolute property.

This question was considered in Gerbrich v. Freitag (Ill.) 73 N. E. 338. In that case a husband and wife each owned property and made a joint and reciprocal will, each devising to the other the beneficial use for life of the property of the one dying first. The validity of the will was questioned, and it was held a husband and wife may by joint will devise their respective property to each other.

In the case of Peoria Humane Society v. McMurtrie (Ill.) 82 N. E. 319, the court had under consideration a joint and mutual will wherein a mother and son made a joint and mutual will and the survivor was given all of the property. The son married after the will was made and died leaving a widow. He made a will after his marriage and it was admitted to probate and his estate settled. Thereafter, the mother died and application was made to probate the joint and mutual will made by her and her son. Probate was denied, and on appeal the appellate court said:

"It is clear that the makers intended that the portion of the will in question should take effect as the will of both or neither, and it was to be operative as a will on condition that neither of the makers should otherwise dispose of his or her property by an individual will."

The disposition of property by a reciprocal will was again under consideration in the case of Frazier v. Patterson (Ill.) 90 N. E. 216. A husband and wife each owned land and a joint will was made devising a life estate in the survivor, and at the death of the survivor to a daughter, and after her death to her issue. The husband died first and his will was probated, and the widow took possession of the property until her death. The daughter preceded the mother in death and left children surviving her. After the death of the daughter the widow executed a will wherein she made a different disposition of her property from that provided in the joint will. On appeal the only issue was whether the joint will on its face proved a compact or agreement to make a will mutually disposing of their property, each for and in consideration of the will of the other. In reference to this matter there is a very learned discussion and the court said:

"A will that is both joint and mutual is one executed jointly by two or more persons, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other. * * * Mutual wills—that is, where two persons execute wills reciprocal in their provisions but separate instruments—may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties, and that each is the consideration for the other: and even in cases where mutual wills have been executed in pursuance to a compact or agreement between the parties, the law appears to be well settled that either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him. A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other, but it becomes irrevocable after the death of one of them if the survivor takes advantage of the provisions made by the other. * * * If two persons make wills, each devising his property to the other, there is no necessary inference that the wills were the result of any mutual or reciprocal agreement or understanding. Such wills might be executed without either party knowing that the other had executed his will; but, where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property. This inference is especially strong where the parties are husband and wife, and where they have a common interest in the welfare of the devisees. In the case at

bar the parties had one daughter. They had a mutual interest in her. They desired that she should have the enjoyment of their real estate during her life and at her death her children should take it in fee. If evidence of a mutual compact is necessary in such case, that evidence is afforded by what the parties did. We cannot see how the situation would be any different if witnesses had testified that they heard this husband and wife discuss what disposition they would make of their respective estates, and that they agreed with each other that they would make a joint will such as they did make. The fact that they made such will is satisfactory proof to our minds that it was done in accordance with their mutual compact to dispose of their property in this manner."

In the case of Martin v. Helms et al., 149 N. E. 770, the Supreme Court of Illinois had under consideration the joint will of a husband and wife and the effect thereof when the will is ineffective as to one of them. The husband preceded the wife in death. The principal objection to the probate of the will was that it purported to be a joint and mutual will, but was not executed by Mrs. Helms in the manner required by statute. It was contended that the instrument could not be probated as the will of Mrs. Helms at her death, and for that reason it was not a valid will of Mrs. Helms, and it could not be valid as to her husband. In that case the court said:

"In effect the will here shows Helms and wife entered into an agreement that they would jointly execute a will giving to the survivor all the property of each of them. The husband performed his part of the agreement by executing the will, but the wife never did. This court said in Frazier v. Patterson, supra, that when a husband and wife execute a joint and mutual will it is not possible that it would have been done without an understanding and agreement between them. In Peoria Humane Society v. McMurtrie, supra, the court said it was clear Mrs. Rouse and her son intended the will should take effect as to both or neither. In that case the joint and mutual will was subject to the right to make an individual will. Neither of those cases involved the direct question here presented, but they recognize that joint, mutual, and reciprocal wills are made pursuant to an agreement and understanding and must take effect as to both parties or neither. The will here involved could not take effect as to Mrs. Helms. If she had died first, the instrument could not have been admitted to probate as her will, because it had not been executed in compliance with the statute. Her husband executed the will in consideration of her promise to execute it. She failed to keep her promise, and so the consideration of the husband's execution of the will failed. Can the instrument be a valid will disposing of the husband's estate to his wife when the consideration for making it—his wife's promise to devise to him her estate if he survived her—has wholly failed? Under the peculiar circumstances of this case, we think the instrument had to be valid as to both or it was invalid as to both. It purported to be a joint, mutual, and reciprocal will of both, for the benefit of the survivor. It was, in fact, the will of the husband only. It could not be doubted that if the wife had by fraud induced her husband to execute the will, but deceived him by not executing it herself, it would not be his will. Here there was no actual fraud and no such charge can be made, but the result is the same as if a fraud had been perpetrated by Mrs. Helms. It was the intention of the parties that the instrument should be effective as the will of both and give the survivor the estate of the one dying first. This intention and agreement were not carried out and it never became the will of either."

In the instant case, assuming that W. E. Smith preceded his wife in death and no will had been written, then under the first division of section 11301, C. O. S. 1921, Rita Smith would have inherited one-half of his estate and Ella Rogers would have inherited the other half. Again supposing that W. E. Smith preceded his wife in death, since there was no intention shown in his will to disinherit his daughter, Ella Rogers, she would take as a forced heir the same proportion of his estate as she would have taken had no will been written. She therefore, under the facts in this case, would take one-half of the estate. Then the most the wife, Rita Smith, could take under the will was one-half of the estate, the same interest she would have taken had no will been written. The will, therefore, conveyed no interest in the estate of the husband to her.

When W. E. Smith and Rita Smith executed this will, what was their understanding as to the estate the survivor would receive under it? Rita Smith understood by the terms of the will that if W. E. Smith died first, she would inherit all of the estate that he owned at the time of his death. With this understanding, she executed the will directing that all the property she should be possessed of at the time of her death should go to W. E. Smith. The terms of the will on the part of W. E. Smith could not be carried out in accordance with the directions therein, because he had a daughter by a previous marriage who had in no way been mentioned in the will and who, under the law, on his death, would take one-half of his estate as his heir.

Under the terms of the will, Rita Smith

was to take all of his estate. Under the facts of this case and under the law, she could only take that portion that was given to her as an heir, and therefore the will gave her nothing and was ineffective as to her. Suppose W. E. Smith had caused her to execute the will and represented to her that he would execute it, but in fact never did execute it. This would be a fraud upon Rita Smith, and the will could not be probated as her will. It is the same as if he had never executed it, because nothing in addition to what the statute gave her as an heir passed to her by virtue of the execution thereof by him and, in law, it was a fraud upon her. .

We concede that there was no actual fraud and no intention to deliberately deceive Rita Smith, but the result is the same as if a fraud had been intentionally perpetrated by him. It was the intention of Smith and his wife that the instrument should be effective as to both and give the survivor the estate of the one dying first. This intention could not be carried out in so far as W. E. Smith's estate was concerned, because of the forced heir, and since this is true, it never became the will of Rita Smith. Since the will is mutual and reciprocal and is ineffective as to W. E. Smith, it necessarily follows that it is ineffective as to Rita Smith.

It is immaterial as to which of the parties died first, because it is clear that the makers intended the will in question should take effect as the will of both or neither, and since it was ineffective as to Rita Smith, it was ineffective as to W. E. Smith.

The alleged will of W. E. Smith was before this court in the case of Rogers et al. v. Mosier et al., 121 Okla. 213, 245 Pac. 36. It was there held the instrument declared upon could not be probated as his will. There are issues in the case at bar that were not before this court when the alleged will of W. E. Smith was here.

Under the facts and issues presented herein, we do not think the instrument can be probated as the will of Rita Smith, and the case is therefore reversed, with instructions to deny the application for the probate of the will.

BRANSON, C. J., MASON, V. C. J., and HARRISON and RILEY, JJ., concur. .

LESTER and HUNT, JJ., dissent.

---

HUNT, J. (dissenting). I do not agree with the conclusion of law announced by the majority opinion herein, but in my judgment the question therein decided is not properly before us in this appeal, and I therefore base my dissent principally upon the fact that the opinion decides the case on a theory presented for the first time in this court, and is therefore in conflict with an unbroken line of decisions heretofore handed down by this court.

This proceeding involves a contest over the probate of the will of Rita Smith. The will was duly admitted to probate in the county court of Osage county, and appealed to the district court of Osage county, and trial de novo was had and judgment was rendered again admitting the will to probate, and it is from this judgment that this appeal is prosecuted.

In the trial of the case considerable testimony was introduced in an effort to establish that the will was executed by the testator under duress, force, threats of violence, and undue influence, same being the grounds relied on by contestants for denying probate of the will. After hearing the evidence and argument of counsel the trial court announced his findings as follows:

"The Court: Let the record show, counsel in this case on both sides waive further argument and agree that the court should decide the case at this time.

"Gentlemen, of course there is quite a conflict of testimony in this case, as I view it; the testimony on behalf of the proponent of this will and the witnesses who propose it is that this will is executed with the same formality that any will is ordinarily executed with; that the will, according to Mr. Johnson, who wrote the will was discussed with the parties making the will at length for a period of some weeks or two before the will was finally drafted. At the time of the execution of the will, the two witnesses who subscribed the will testified that this will was presented to them, and that they were requested to sign it as witnesses. One of those witnesses is a brother of Mr. Johnson, who at this time admits that he is interested in the result of this litigation. The other witness is a representative of the Osage agency in that district, a man whose duty it is to care for the interest of the Indian and look after their interests, to report any misconduct, or any trouble to the superintendent. Then we have the testimony of at least two other witnesses, may be more, two or three other witnesses anyway, to the effect that Smith had undue influence upon his wife in procuring her signature to this will. We have the further testimony of Mollie Burkhart to the effect that she and Bill Smith's family—Bill Smith and his wife—had some difference while they were out in Colorado. That testimony was leaving out Mollie Burkhart. I think the

law always favors the upholding of wills, the solemn declarations of persons at a time when they are thinking of the disposition of their property at the time of their death; and in all I think that this testimony offered here on behalf of the proponent of the will amply supports the will, and it will be the order of this court that the will be admitted to probate.

"Mr. Files: Will the court make the finding in this to the effect that she was not acting under duress when this will was executed and that no coercion was used?

"The Court: The court will find that this will was executed by her of her own free will and accord, and that no coercion was used to procure the signing of the will.

"The court finds that further, from the fact that the will was in existence for a period of at least 18 months prior to the death of these parties, and that no attempt was made, according to the evidence in this case, to revoke the will, or to draw a new will, and that is very strong evidence to my mind of the fact that this will was executed by her of her own free will and accord, without any duress or threats being used on the part of Bill Smith.

"Mr. Holcombe: Your honor reserved ruling on the demurrer. You have not passed on our demurrer, on the testimony of the plaintiff in support of the will."

This judgment was rendered on June 25, 1926, and motion for new trial was thereafter filed and overruled and the appeal filed herein on December 28, 1926. Thereafter, on April 15, 1927, plaintiffs in error filed brief herein in support of their appeal, and we find on page 5 therein, in their statement of the case, the following language:

"In due time and in proper form the appellants herein filed their objections contesting the said will on the ground of fraud, undue influence, lack of mental capacity, etc."

Again, from page 27 of said brief, under the heading of "Assignment of Error," we quote as follows:

"Contestants' motion for new trial was filed within due time and contained, as one of its grounds, that the judgment of the trial court was contrary to and not supported by the evidence. We, therefore, present in this appeal but the one assignment, to wit: The judgment of the court is contrary to and not supported by the evidence."

Again, from page 27, under heading "Argument and Citation of Authorities," we quote as follows:

"This being an equity case, it is the duty of this court to either affirm the judgment rendered by the trial court or reverse this cause and render judgment upon the record. We present but one assignment of error. In presenting this assignment, several principles of law must be considered and the evidence contained in the record analyzed and applied to the same."

We quote these paragraphs from plaintiffs in error's brief for the purpose of showing the only assignment on which this action was briefed and presented to this court and as being conclusive, in our judgment, as to the theory upon which the case was tried in the court below. The record clearly discloses that the only grounds relied on in the court below for contesting the will were "fraud, undue influence, lack of mental capacity, etc.," as herein quoted from plaintiffs in error's original brief. The only assignment on which the plaintiffs in error seek a reversal is that the judgment of the court is contrary to and not supported by the evidence. On June 21, 1927, defendants in error filed their brief in answer to brief of plaintiffs in error and in support of the judgment rendered in the court below.

This cause was thereafter, on April 3, 1928, orally argued before the court, and then, for the first time, either here or in the court below, the alleged invalidity of the will on the ground that it was a mutual or reciprocal will and if void as to one party to it, is void as to both, was asserted and relied on by counsel in the oral argument, and four days thereafter a short supplemental brief was filed by plaintiffs in error, citing the Illinois case of Martin v. Helms, 149 N. E. 770, upon which, and the cases therein cited, the majority opinion is based.

We have thus specifically set forth the facts as above to show clearly the theory upon which this case was tried and decided in the trial court and originally briefed in this court, and to further show clearly just when the theory upon which the case was decided here was first presented to this court, for it is this state of facts as shown by the record, which clearly, in my judgment, brings the majority opinion in direct conflict with the cases herein cited. Counsel for plaintiffs in error did not contend that the theory suggested upon oral argument and in the supplemental brief filed four days thereafter had ever theretofore been suggested in this case, and nowhere in the record or briefs is it suggested that the trial court erred upon this proposition, except in the oral argument here and supplemental brief filed thereafter, as heretofore pointed out.

The rule heretofore announced by this court and consistently followed is found in the early case of Bouton v. Carson, 51 Okla. 579, 152 Pac. 131, the third paragraph of the syllabus being as follows:

'A party cannot try his case in the trial court on one theory, and then ask a reversal of the judgment in this court on a theory not presented to the trial court and not raised by the pleadings."

This rule has been reaffirmed by this court in the following cases: Wallace v. Blassingame, 53 Okla. 198, 155 Pac. 1143; Primous v. Wertz, 65 Okla. 7, 162 Pac. 481; Board of Com'rs v. Henderson, 66 Okla. 282, 168 Pac. 1007; Edwards v. Phillips, 70 Okla. 9, 172 Pac. 949; Collings v. Industrial Sav. Soc., 94 Okla. 271, 221 Pac. 1036; Adams v. Berry-Beal Co., 99 Okla. 86, 225 Pac. 927; Smith v. Gooding, 100 Okla. 230, 229 Pac. 269; Goldstandt v. Goldstandt, 102 Okla. 218, 228 Pac. 770; Fast v. Gilbert, 102 Okla. 245, 229 Pac. 275; Price v. Preston, 103 Okla. 47, 229 Pac. 437; Polson v. Revard, 104 Okla. 279, 232 Pac. 435; Josey Oil Co. v. Board Co. Com'rs, 107 Okla. 266, 231 Pac. 272; Stapleton Motor Co. v. Coley, 107 Okla. 269, 232 Pac. 28; Cole v. Kinch, 134 Okla. 262, 272 Pac. 1017.

In Goldstandt v. Goldstandt, supra, the second paragraph of the syllabus is as follows:

" 'Where a defendant relies upon a certain defense in the trial court, he will not be permitted to shift his ground of defense on appeal so as to present other defenses not presented nor relied upon in the trial court." Duffy v. Scientific American Compiling Dept., 30 Okla. 742, 120 Pac. 1088.' "

And in the body of the opinion, the court said:

"The lower court must be given an opportunity to function in regard to the theories of both plaintiff and defendant, as was said by this court in Gunn v. Jones, 66 Okla. 321, 169 Pac. 895:

" 'A party bringing or defending an action is required to frame his pleadings in accord with some definite or certain theory, and the relief to which he claims to be entitled must be in accord therewith. On appeal he is bound by the position and theory assumed, and on which the case was heard in the trial court.'

"In the case of Duffy v. Scientific American Compiling Dept., 30 Okla. 742, 120 Pac. 1088, this court said:

" 'Where a defendant relies upon a certain defense in the trial court, he will not be permitted to shift his ground of defense on appeal so as present other defenses not presented nor relied upon in the trial court.'

"The fact that the defendant in the court below, by cross-examination of the plaintiff's witnesses, elicited some statements which might relate to the new theory presented here will not bring him from under the ban of the rule, when his pleadings in the lower court were filed in writing and clearly do not include the new theory advanced here. It is not fair to the lower court nor to a litigant's adversary that he be permitted to conceal during the trial in the lower court the theory of law on which he relies for a defense and bring his adversary here with great delay and expense to contest a theory not disclosed in the lower court. Litigation takes on a serious aspect in the lower court. This court on appeal is concerned primarily in correcting erroneous conclusions of the lower court made on matters to it presented."

In Re Smith's Estate, 125 Okla. 104, 256 Pac. 725, an appeal involving appointment of administrator of the same estate involved here, this court said in the opinion:

"It is well settled that a change of theory on appeal will not be permitted."

In Re Nichols' Will, 64 Okla. 241, 166 Pac. 1087, it was held that an objection that the court was not legally in session during the trial made for the first time in this court should be denied. In that case the proponents of the will objected at all times to the court's jurisdiction, but no objection was urged that the court was not legally in session, and in the body of the opinion we find this language:

"It is difficult to escape the conclusion that the objection now made is an afterthought. It is not the policy of the courts to permit parties to speculate on the outcome of a trial, and afterwards on appeal raise for the first time the question that the court was not legally convened."

Likewise, it is not the policy of the courts to permit litigants to submit their cases to the trial court on one theory, and then, after an adverse decision has been rendered, present an entirely new theory in this court and seek a reversal on a theory not even presented or suggested in the court below.

In cases appealed to this court it sits as a court of review to review and correct errors occurring in the court below, and in order to reverse a case we must find there has been some error on the part of the trial court, and it is manifestly unfair to the trial court and indeed an anomaly to say that the trial court has erred on a proposition not presented to it and upon which it had no

opportunity to pass and which original counsel in the case had neither suggested in the trial of the case nor in this court in the original brief filed herein, but which was raised for the first time on oral argument in this court by new counsel who did not even appear in the court below. As was said In re Nichol's Will, supra, we cannot escape the conclusion that the contention now made is only an afterthought.

Such procedure is contrary to, and in condict with, the rule of this court which is well settled by the cases herein cited, and we can see no good reason for departing from same in this case, but in my judgment a proper respect for the established rules of procedure and practice should impel us to follow same and to reaffirm the doctrine so often announced and grounded, as it is, in both reason and justice.

The majority opinion having disposed of the case on the theory that the will was mutual and reciprocal, and holding it was void as to one of the parties and it was therefore void as to both, did not consider or pass upon the sole proposition urged in the original brief for reversal, to wit, the alleged insufficiency of the evidence to support the judgment.

I have carefully reviewed the entire record which plaintiffs in error very properly urge it is our duty to do in cases of this kind, and I am of the opinion that the judgment of the court is not clearly against the weight of the evidence. In Baldridge v. Zigler, 103 Okla. 219, 229 Pac. 831, the rule was announced in the second paragraph of the syllabus as follows:

"In an equitable action the findings of the trial court should be sustained unless it appears that his findings are clearly against the weight of the evidence. The findings of the trial court should be strongly persuasive and should not be set aside unless this court can say in equity and in good faith that the conclusion reached by the trial court is clearly against the weight of the evidence."

On the authority of this case and numerous others to the same effect, this case should, in my judgment, be affirmed.

Mr. Justice PHELPS and Mr. Justice LESTER authorize me to announce that they concur in the views herein expressed.