GEORGE *v.* SMITH.

4-9118                                                 227 S. W. 2d 952

Opinion delivered March 20, 1950.

*Wilson & Wilson* and *Claude Duty*, for appellant.

*Eli Leflar*, for appellee.

GRIFFIN SMITH, Chief Justice. Effectiveness of the attempt of Peter M. Smith to make a will is the subject of controversy. The document expressed the mutual or reciprocal purposes of two bachelor brothers who, living together, had much in common. They were joint owners of real and personal property, shown in the inventory to be worth slightly more than $10,000.[1] After providing that each should take in succession to the other, the concluding paragraph of the will reads, "If both of the makers . . . should pass away, all of our . . . property shall go to our brother, William I. Smith". The writing was in Peter's hand, dated January 1, 1941. Three weeks later a Notary Public certified that its execution had been acknowledged. Peter died in May, 1948, followed by James in August. William died in February, 1949. Another brother, Henry P., and a sister, Mary George, are now living.

The jointly-signed document was offered for probate September 2, 1948, as the will of Peter M. Smith, but in the petition there is the statement that James died testate. The appeal is from the Court's holding that Peter's property passed under his holographic will.[2]

---

[1] The joint valuation is inferred because the inventory lists Peter's half as slightly in excess of $5,000.

[2] There is no contention that the Court erred in holding that the will, as to James, was void for want of formality. Other than signatures the writing was in Peter's hand, hence as to James it was not holographic.

Appellants' assignments are three-fold: (a) Joint wills are permissible only when authorized by statute, and Arkansas has none; (b) in jurisdictions where joint, mutual, or reciprocal wills are recognized, they are not effective unless each testator is bound; (c) where joint wills may be probated as the valid act of one of the parties, the uniform requirement is that the instrument must be so drawn that it will stand the test as the testamentary expressions of either; or, if one's act is to be avoided, there must be ground for a judicial finding that the wishes of the testator whose signature is disregarded, should, as to the context, be treated as surplusage.[3]

An early case dealing with joint wills was written by Judge EAKIN in 1879. *Hershy* v. *Clark*, 35 Ark. 17, 37 Am. Rep. 1. Validity of a contract between Abram and Aaron Clark, unmarried brothers, was involved. They had agreed that upon the death of one, the survivor should hold the common property the two had owned, to the exclusion of all others. Upon the death, intestate, of one of the brothers, his heirs claimed what the apportionable share of their dead relative would have been, as against the heirs of the other brother, who died intestate some time after the first brother had passed away.[4] In commenting on this contract the Court said:

"It professes to convey nothing in presenti, and cannot stand as a conveyance; nor can it be held as a mutual covenant. It is unreasonable and against public policy that one should be allowed, by an irrevocable contract, not only to denude himself of all control of all his property . . . which he may at the time possess, but also all he may afterwards acquire. Such a contract would not be enforced either in law or equity. It

---

[3] "This joint combined contract and will . . . by and between Peter M. Smith and James T. Smith have jointly agreed . . . to write this agreement and will. It is therefore agreed that if either of us should pass away by death the other one shall inherit and come into possession of all of his property and holdings, . . . and it is agreed that we or either of us is to support our brother, William I. Smith, as long as we are financially able to do so and as long as he has an honest, kind, loving, agreeable disposition. . . . If both of the makers of this will should pass away, all of our holdings . . . shall go to our brother, William I. Smith."

[4] See *Steinhauser* v. *Order of St. Benedict*, 194 Fed. 289, at p. 298.

is obvious, too, that the brothers did not intend their obligations to have that force during their lives. . . . It was revocable at pleasure by either".

Nancy Clark·was the mother of Abram and Aaron; Sarah Clark was Nancy's unmarried daughter. In 1860 Sarah and Nancy executed a writing intended as their joint will. It was duly witnessed; and it directed disposal of certain property once owned by Abram and Aaron, but provided that the bequests and devises, in respect of use and enjoyment, should be postponed until the death of *both*. A reservation was that the survivor would have sole control, management, and disposal of all the property during her lifetime—the balance, undisposed of at the death of the survivor, "being all that was subject to the provisions of the will".

In commenting on the agreement between Abram and Aaron, the Court said: "Whether, if properly proven, it might not have operated, on the contingency of the death of one of them, as his *separate* will, is a question which does not arise, and upon which we intimate no opinion. No effort was made to prove or sustain it as the will of Abraham, with regard to his share of the joint property".

As to the document executed by Nancy and Sarah, it was held that the effort to make a joint will was nugatory; [for, said the Court] "There can be no such thing as a joint will, to take effect on the death of the survivor. A will must take effect at the death of the testator, and not at a time still in the future".[5]

Judge HART in *Cole* v. *Shelton*, 169 Ark. 695, 276 S. W. 993, said of the first Hershy-Clark case that, in following the common law, the Court had definitely disapproved joint wills where postponement of the benefits was the object. See, also, the opinion of Mr. Justice ROBINS in *Stewart* v. *Tucker*, 208 Ark. 612, at p. 616; 188 S. W. 2d 125.

[5] Ten years later the Hershy-Clark controversy was again before the Court in another form. The opinion was written by Special Judge Geo. P. Smoot, of Prescott, who was appointed by Gov. J. P. Eagle June 9, 1889. See *Clark* v. *Hershy*, 52 Ark. 473, 12 S. W. 1077.

The case of *Nye* v. *Bradford*, 144 Tex. 618, 193 S. W. 2d 165, is extensively annotated in the 169th A. L. R., beginning at page nine. It is there said that the great weight of modern authority is to the effect that an instrument will not be denied probate as a will on the ground that it was executed by two or more persons purporting to sign as testator, or because it contains bequests which are reciprocal, and was executed pursuant to a contract, provided its effect is not dependent upon the death of the survivor in order to be the will of the first one to die.[6]

Following the quotation from A. L. R., copied in the margin here as the sixth footnote, the Hershy-Clark opinion is cited in support of the rule that it is essential to the validity of a will jointly executed by two or more testators "that [it] be effective upon the death of one of the testators so far as it relates to the property of that one"; nor is such a will rendered invalid as the separate will of the first testator who dies if, included in the document, there is a provision that the property is to be divided upon the death of the surviving testator, "where it appears that the paramount intent of the testator was that the instrument could be offered for probate on the death of one of the testators as his will, notwithstanding the division of the property would await the death of the other testator".

Joint or mutual wills form the subject of a note in 61 Harvard Law Review, p. 675. Mutual wills, it is said, are the separate testamentary dispositions of the parties,

---

[6] At page 17 of the A. L. R. citation it is said: "Both the common law and ecclesiastical courts of England declared joint wills invalid when they first came into litigation. Such was also the rule of the earlier decisions of the courts of this country where the will was not only joint in execution, but joint in substance in the respect that legacies and devises were bequeathed to various persons from a joint fund which derived from the separate property of the testators. The view was that such a will, being joint in substance, is necessarily in the nature of a compact between the testators and lacks the quality of revocability which is inherent in a will, so that it is invalid both in whole and in part and not admissible to probate as a joint will or as the separate will of either testator. Also, reference was made to the practical difficulties of the settlement of the separate estates of the decedents under such an instrument. But such is no longer the law in England. Moreover, the American decisions in support of such view have been directly overruled or limited so strictly as to be overruled in effect".

and have always been recognized as valid. And [says the text-writer] although the early cases were to the contrary, it is now settled that joint instruments will be upheld. It was at one time thought that one co-testator could not revoke a joint will without the consent of the other, [because, as it was believed] ''this disability was a fatal denial of the essentially ambulatory character of a will. However, all modern decisions treat a joint will which contains separate dispositions as revocable by either co-testator as to his property, and admit it to probate upon the death of each testator as his separate testamentary disposition''.

Continuing the discussion, the Review writer says: ''Another objection to the validity of the will was that the instrument did not take effect on the death of the one first dying, and therefore could not in any case be his will, and might be invalid as to the survivor also. Even the more modern decisions have held invalid a joint will which does not become effective until the death of the survivor, whether it bequeaths his separate property or property owned by them in common. . . .''[7]

It will be conceded the cases lean to the rule that if one co-testator is not bound, the other is not. An exception [not wholly in point here] is *Re. Cole,* 171 N. C. 74, 87 S. E. 962, where a holographic will was written by the husband and signed by his wife. It was admitted to probate as the husband's will in spite of the want of formality that would have bound the wife. Some of the cases give effect to the presumption that neither testator would have executed the instrument but for the reciprocal promise of the other. See *Burkhart* v. *Rogers,* 134 Okla. 219, 273 P. 246. The Oklahoma Court cited in reliance *Martin* v. *Helms,* 319 Ill. 281, 149 N. E. 770. In that case the Court spoke of ''the peculiar circumstances'' attending execution of the will. In *Burkhart* v. *Rogers,* Mr. Justice HEFNER said it was the intention of the husband and wife whose joint will was being construed that the instrument should be effective as to both ''and give the survivor the estate of the one dying first''.

---

[7] See Atkinson, Wills, §§ 69, 70; 1 Page, Wills, § 104, 3d Ed.

Our own cases have not established such a barrier, and we are loath to do so unless failure in the particular case would be inequitable through imposition of hardships. Law writers call attention to a dying soldier's fitful writing, "All to Mother", and mention it as one of the shortest known wills. But the last wish preceding death, the purpose, the intent, were dramatically clear, and no formulary was permitted to circumvent the wish.

So, here, Peter and James were not concerned with niceties of the law. Neither knew that when James signed, and when he later acknowledged Peter's writing, that the absence of witnesses would prevent the document from being probated as the will of James. For these reasons we are not willing to say as a matter of law that Peter died intestate. We leave to those who would speculate the task of formulating an answer to the question, "Was Peter's conduct in respect of volition dependent upon the signature of his brother?" The circumstances are unusual, but the justice is clear.

．　　．　　．　　．

From our own decisions, and from an examination of what other Courts have said, and from comments by text-writers, the conclusion comes that we have not ruled against joint wills *per se*. They may be upheld if enjoyment of the property is not postponed "to the death of the survivor".

In the case at bar there remains to be determined whether inclusion of such phrases as those containing "contract", and "agreement", and expressions favoring William, were dominant or incidental—whether the presence of these terms directs the answer that their importance was such that but for the intent their use would suggest the document would not have been executed. We are not called upon to decide whether an enforcible contract was made.

That the writing was intended as a will there can be little doubt. Use of "inherit", and "come into possession", seem synonymous in the provision that "if either of us should pass away by death the other shall

inherit and come into possession of all of his property and holdings''.

There is also this provision: ''If *both* of the makers of this will should pass away, all of *our* holdings'' shall go to William.[8]

It is not improbable—in fact, words justify the inference—that the brothers visualized a common disaster, or concurring death. In dealing reciprocally *with each other,* the words were, ''if *either* of us should pass away by death''.

The survivor's duty to William ''while he retains an honest, kind, loving, and agreeable disposition'' was the expression of a wish only. Fulfillment, therefore, was discretionary. At most, neither Peter nor James intended to impose upon the other more than a moral obligation to look after William during William's good behavior.

Considering the will from all of its angles, we feel that when the instrument was drawn Peter intended, irrespective of other considerations, that James should receive the property. We are unwilling to defeat that plan through the imposition of a technical construction not necessary from a legal standpoint, and a construction that did not occur to either of the participants.

Affirmed.

Mr. Justice HOLT and Mr. Justice GEORGE ROSE SMITH dissent. Mr. Justice LEFLAR not participating.

HOLT, J. We have no statute in this State permitting joint wills. We have specifically held such wills invalid in at least two cases presently referred to.

The will above is as follows: ''Rogers, Benton County, Arkansas, January 1st A. D. 1941. This joint combined contract and will entered into this 1st day of January A. D., 1941, By and Between Peter M. Smith and James T. Smith have jointly Agreed while we are of Sound Minds to write this agreement and will. It is

---

[8] Italics supplied.

therefore agreed that if either of us should pass away by death the other one shall inherit and come into possession of all of his property and holdings wheresoever found in this State or any other. Such as real estate, Personal property, bank stocks, bank deposits, security holdings, notes, bonds, mortgages, and it is agreed that we or either of us is to support our brother William I. Smith as long as we are financially able to do so and as long as he has an honest, kind, loving, agreeable disposition.

"All doctor bills and funeral and burial expenses to be paid by the one that gets the others property.

"If both of the makers of this will should pass away, all of our holdings and property shall go to our brother, William I. Smith. Makers: (s) Peter M. Smith. (s) James T. Smith. Witnesses: Sworn and subscribed to before me, a Notary Public for the above named County and State, this January 22nd, 1941. (s) R. W. Owens, Notary Public. My commission expires March 23rd, 1941.''

It is undisputed that at the time this will was made, and also at the death of Peter, Peter and James Smith owned all the property involved as tenants in common. On its face, the will shows that it was a joint will and was so intended to be by Peter and James. They called it "this Joint combined contract and will." They both signed it as such and as I construe it, each thereby agreed and contracted with the other, to pay the debts of the one first to die, look after their brother William, and on the death of the survivor of the two (Peter and James) all of their jointly owned property to go to their brother William, in case they, Peter and James, predeceased him.

The early case of *Hershy* v. *Clark, Ex., et al.,* 35 Ark. 17, should control here. It was there held: (Headnote 1) "A mutual obligation in writing between two tenants in common of personal and real property, that at the death of either the survivor shall have all his interest in the common property which he then has, or may have at the time of his death, conveys nothing in *presenti,* and can

not stand as a conveyance, nor be upheld as a mutual covenant. It is revocable at the pleasure of either, and can have no binding force during their joint lives.''

In the body of the opinion, it was said: ''On the eleventh of May, 1850, both brothers, being then residents of Pope county, entered into a mutual obligation in writing under seal. After reciting that they had, mutually and by their joint labor and energy, acquired what property they, and each of them, then held and possessed, they thereby agreed, between themselves, that the survivor of them should have, hold and possess, all the interest of both parties in the property, real and personal, which they then owned, to the exclusion of all other persons whatever. * * * The instrument executed between the brothers conveyed nothing in *presenti.* The intention of it is expressly declared to be that the survivor should have all the interest of both parties in the property. * * * There can be no such thing as a joint will, to take effect on the death of the survivor. A will must take effect at the death of the testator, and not at a time still in the future.''

In the case of *Cole* v. *Shelton,* 169 Ark. 695, 276 S. W. 993, 43 A. L. R. 1008, Judge HART, speaking for the court, reaffirmed the holding in *Hershy* v. *Clark* in this language: ''We do not think the principles of law there decided are controlling under the facts in the case at bar. In that case Abram and Aaron Clark, brothers, had by their joint industry acquired a large amount of personal and real estate, which they held as tenants in common. The brothers entered into a mutual obligation in writing in which each conveyed to the survivor all of his interest in their joint property. Abram died first, and Aaron took charge of their joint property as owner. He made a will giving to his mother and his sister Sarah all of his real estate in two counties. His mother and his sister Sarah took possession of the property under his will after his death. Subsequently they executed a joint will in which they devised the property they had received under the will of Aaron Clark to various persons.

"The court held that the joint instrument between Abram and Aaron Clark and the joint will of Nancy and Sarah Clark should both have been disregarded. Following the common law, the court held that there could be no such thing as a joint will to take effect on the death of the survivor. In each instance, the persons attempting to execute the joint will were the owners of the property intended to be devised as tenants in common, and intended that the will devising their joint property should take effect upon the death of the survivor. Such an instrument can not be proved as the separate will of either of the supposed testators, because it disposes of their joint property, and because it implies an agreement between them which is inconsistent with its revocability and therefore prevents its operation as a will."

In *Frazier et al.* v. *Patterson et al.,* 243 Ill. 80, 90 N. E. 216, 27 L. R. A., N. S. 508, 17 Ann. Cas. 1003, the Supreme Court of Illinois thus defines a joint will: "A will that is both joint and mutual is one executed jointly by two or more persons, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other."

In 43 A. L. R. 1010, the annotator, in a note following the reported *Cole* v. *Shelton* case above, says: "The reported case (*Cole* v. *Shelton, supra,* is from a jurisdiction which follows the rule that a joint will which is to take effect only on the death of both testators is invalid," and in 58 Am. Jur., page 462, paragraph 683, the author says: "The policy of the law is generally against the validity of a joint will executed on the condition expressed in it that it is not to be effective as a will, or is not to be probated, until the death of the testator last surviving. Such a will cannot be probated as the will of either testator. Whether the operation of the will is postponed until the death of the survivor in express terms or by necessary implication is immaterial; in either case the will is void and should be refused probate altogether. Effort should not be made to give effect to the instrument as the separate will of the first of the testators to die,

during the life of the survivor, where such would result in defeating the intention of the deceased testator.''

Both of the above Arkansas cases are cited in support of the text.

To uphold this contract and will would, it seems to me, in effect, overrule our holding in *Hershy* v. *Clark* above, which was, as indicated, reaffirmed in *Cole* v. *Shelton* as late as October 1925.

I respectfully submit that the judgment should be reversed.

GEORGE ROSE SMITH, J., dissenting. The cases directly in point hold that when two people execute a joint will by which each leaves his property to the other, the instrument must be valid as to both or it will be valid as to neither. *Martin* v. *Helms,* 319 Ill. 281, 149 N. E. 770; *Burkhart* v. *Rogers,* 134 Okla. 219, 273 Pac. 246. (*In re Cole's Will,* 171 N. C. 74, 87 S. E. 962, cited by the majority, is readily distinguishable, for there the testators' bequests were not to each other but were made jointly to a charitable institution.) I think the case at bar illustrates the wisdom of the rule adopted in other jurisdictions. Had James Smith been the first to die, Peter would have found that he was not entitled to his brother's estate by virtue of the joint will. It seems clear that each brother signed this instrument upon the assumption that the survivor would receive the other's property, and hence if that expectation fails as to one it must fail as to the other. Under the majority's interpretation James had all to gain and nothing to lose, while Peter stood to lose everything and gain nothing. As I cannot believe that Peter would have joined in the instrument had he been aware of its inequality I think we should follow the unanimous trend of authority elsewhere and hold this will invalid as to both testators.