## Siple Estate

*Robert Ruppin*, for proponents.
*Paul A. Mueller*, for appellants.

BOWMAN, P. J., March 28, 1955.—Frances J. Siple, widow of Earl M. Siple, who died October 27, 1953, has appealed from the decree of the Register of Wills of Lancaster County admitting to probate as the last will and testament of decedent the following writing:

"Jan. 5, 1952

"Our Last Will

"We bequeath to Richard Bleacher ($5000) five thousand dollars to Ronnie Siple ($5000) five thousand dollars. These two are nephews. The above bequests to be held in trust until they reach the age of 21 yrs. The Conestoga Bank to be trustees The personal effects of Frances J. Siple to Catherine Bleacher (a sister) such as clothing, jewelry. The balance of all personal property and real estate to John R. Siple, Such as Cash, stocks, Real estate property, automobile, furniture, mens clothing, tools, etc. John R. Siple to be executor of all. This is our last will, we are in sound mind and want, expect these wishes to be fulfilled.

"Earl M. Siple
"Frances J. Siple

"Witnesses

"Paul R. Ritchy, Jr.

"George J. Baxter."

Following the signatures are the words: "Investors Stock & Mutual Funds to be sold for the trust fund of nephews." These words were not admitted to probate by the register.

The grounds upon which appellant bases her appeal are: (1) That she did not sign the disputed writing and her purported signature is therefore a forgery; (2) that it could be effective as a will only upon the death of both decedent and his wife, if at all, and (3) that the forgery constitutes fraud and vitiates the whole instrument.

In addition to his wife, decedent left to survive him as the only other person entitled to his estate under the intestate laws his father, Theodore F. Siple.

By stipulation of counsel the testimony taken before the register was received in evidence.

At the hearing before the register George J. Baxter, a member of the Pennsylvania State Police, testified that at a parking lot operated by decedent in the City of Lancaster, Pa., he was requested by decedent to sign the writing as a witness; that decedent stated to him it was his will; that before signing he read sufficiently of the writing to assure him that it had the characteristics of a will; that he then signed his name as a witness; that he did not see decedent sign it, and he could not recall whether decedent's name, that of his wife, or the other witness' name were then on the paper. Paul R. Ritchy, Jr., an employe of decedent and an attendant at another parking lot operated by him in the city, testified that he was also requested by decedent to sign the writing as a witness; that decedent informed him at the time that it was his will; that he then signed his name thereto, but was uncertain as to whether decedent's name, Mr. Baxter's name, or that of

Frances J. Siple appeared thereon at the time of his signing.

Notwithstanding that these two witnesses did not see decedent sign his name to the writing in controversy and were unable to recall or state that they saw decedent's name thereon, it is not seriously disputed that the name of "Earl M. Siple" is decedent's signature. John R. Siple, decedent's brother, and Charles H. Eshelman, assistant cashier of the Conestoga National Bank of Lancaster, both of whom were familiar with decedent's handwriting, testified that in their opinion the name of decedent on the writing is his signature. Mr. Eshelman was an assistant cashier of the bank for a number of years, during which time he had dealings with decedent in his relationship to the bank and from time to time saw him write his name. Appellant in her testimony admitted that the signature "looks somewhat like" that of her deceased husband.

As did the Wills Act of 1917 (section 2 thereof), the Wills Act of 1947 (sec. 4, 20 PS §180.4) provides that a will shall be proved by the "oaths or affirmations of two competent witnesses". Proof of the will by competent witnesses is not restricted to those who are the subscribing witnesses: Novicki v. O'Mara, 280 Pa. 411, 416; Morris Will, 349 Pa. 387, 391.

In James Estate, 329 Pa. 273, in commenting upon the difference between a will signed *by* the testator and one signed *for* him and to which he makes his mark, the court said at page 277:

"In the former instance, all that the statute requires is that the will be signed at the end thereof, and all that is necessary, therefore, for the proof of such a will, is to establish by two witnesses that the name appearing at the end is the signature of the testator; such proof may be furnished by witnesses who either saw the signature being subscribed, or heard the testator subsequently acknowledge it, or, being familiar with his handwriting, can identify it."

In the instant case Charles H. Eshelman was a disinterested witness. The fact that John R. Siple is the residuary legatee does not disqualify him as a witness to prove the will: Dalbey's Estate, 326 Pa. 285.

Mrs. Siple testified both at the hearing before the register and at the hearing in this court on the appeal that the signature "Frances J. Siple" appearing on the writing is not her signature; that she never saw the disputed writing prior to her husband's death and therefore never signed it. At the hearing before the register she submitted a specimen of her signature by writing her name at the request of counsel for proponents. A similar request was made at the hearing on the appeal not only as to her signature, but as to her handwriting generally. However, for reasons hereinafter set forth, we need not and do not decide in this proceeding whether she signed the writing in question. It obviously cannot now be probated as her will.

At this stage we deem it advisable to consider the nature of so-called "joint" or "double" wills. At one time denied in England and pronounced against by courts in the United States, their validity has been upheld in this Commonwealth: Cawley's Estate, 136 Pa. 628; Rhodes' Estate, 277 Pa. 450; Hoffert's Estate, 65 Pa. Superior Ct. 515.

In Cawley's Estate, supra, the opening words of the probated instrument contained the pronoun "we" and included a declaration that the instrument was "our last will and testament". In the dispositive provisions of the will the singular number was used, each testator speaking for himself or herself only. It was held that the will so made was the separate will of each testator who signed it, in the same manner as if a separate copy had been executed by each. It was described as a "double will", there being no joint property or joint devise.

In Rhodes' Estate, supra, the will read: "We, F. and H. R. Rhodes . . . do make and publish this our last will and first we give and be quith all our real estate and personal property to either one that is left during his or her life . . . after our deaths the one-half goes to my brothers and sisters or their heirs and the other half goes to her brothers and sisters or their heirs if either one sees proper they can sell both farms if either of us sees proper can devid som of the money we appoint John Waybright and Lewis Rhodes to sttel up our Estate after our deaths."

It was not disputed that both Mr. and Mrs. Rhodes executed the instrument. Mr. Rhodes predeceased his wife and thereafter the writing was probated as his will. Directly involved was the right of Mrs. Rhodes to have turned over to her securities held jointly by herself and her late husband. It is stated at page 453:

"That the writing in question, while inartificially drawn, is a will cannot be doubted, for it is so designated by the parties, is testamentary in form, makes disposition of property to take effect after death and appoints executors. . . ."

And at page 455:

". . . the paper executed October 15, 1913, has merely the present effect of the will of Frederick Rhodes, operative on his separate estate, and did not . . . reduce her (Mrs. Rhodes') rights to take absolutely the securities upon the death of her husband which were held by her and her husband as tenants by the entireties. . . ."

Under these decisions we can dismiss without comment the contention that the writing could be effective as a will only upon the death of both husband and wife.

But the precise question of whether or not a writing which purports to be a joint or double will is a valid will as to one who signed it, the genuineness of the other signature thereto being in dispute, has not been

decided in Pennsylvania so far as the briefs of counsel show or our own research discloses.

Appellant refers us to Martin v. Helms et al., 319 Ill. 281, 149 N. E. 770, in which the will in question purported to be the joint and mutual will of husband and wife, giving the survivor all the property of each of them. It was signed by both husband and wife, but the wife's signature was not witnessed in the manner required by statute. It was held that joint, mutual and reciprocal wills are made pursuant to an agreement and understanding and must take effect as to both parties or neither; that if the wife had died first, the instrument could not have been admitted to probate as her will because it had not been executed in compliance with the statute; that the intention of the parties was that the instrument should be effective as the will of both and give to the survivor the estate of the one dying first, and that this intention and agreement not having been carried out, the writing never became the will of either.

In Burkhart et al. v. Rogers et al., 134 Okl. 219, 273 P. 246, the asserted will sets forth that the husband and wife declare it to be jointly as well as severally their last will and testament and desires "that all property, real as well as personal, of which we, or either of us, may be possessed at the time of the decease of either of us, shall pass to the survivor in fee, and to be and remain his or her absolute property", and in case both should die simultaneously, to certain designated persons. The wife predeceased her husband and it was held that the will was a joint, mutual and reciprocal will (defined in the opinion as one in which two or more persons make mutual provisions in favor of each other) ; that it was clear that the makers intended the will in question should be effective as to both and give the survivor the estate of the one dying first; that this intention could not be carried out because the husband had a daughter whose existence was unknown

to the wife, and it therefore never became the will of the wife, and that consequently since the will was not effective as to the wife, it was ineffective as to the husband.

As indicated, in both of the foregoing cases the instruments involved were held to be mutual and reciprocal wills. In Cawley's Estate, supra, at page 638, mutual or reciprocal wills are defined as wills executed by two or more persons making reciprocal provisions in favor of each other, whether they unite in one will, or each executes a separate one.

In form the instrument now before us has the characteristics of a joint will. In Hunter's Pa. O. C. Commonplace Book, page 719, we find: "A joint or double will is where two persons join in one instrument. Perhaps the term 'joint will' applies only where persons dispose of their joint or common property, as distinguished from their separate properties, but such distinction is lost in the cases. Joint and mutual wills must be regarded as the separate will of each testator, and may be revoked by either. There is no inference of contract, and the survivor though he accepts and enjoys the estate of the other, may revoke the will as to his own property."

In 69 C. J. 1295, §2710, it is stated:

"A joint will is, in legal effect, the separate will of each of the persons executing it as makers, the fact that it is signed by both or all of them not affecting its validity or effect as the will of either or anyone, and the execution by the other or others being mere surplusage, so far as concerns its effect as the will of each signer."

In Cole's Will, 171 N. C. 74, 87 S. E. 962, the instrument read:

"We give and bequeath to the Methodist Orphanage . . . all our real and personal property after paying all our just debts. . . ."

It was signed by both husband and wife and, except for the signature of the wife, the entire instrument was in the handwriting of the husband. Upon his death, the wife surviving, it was probated as the holographic will of the husband. Although it could not operate as the wife's will, since it could not comply with the statutory provisions as to a holographic will, "for two people could not write such a will", the will was held valid so far as it disposed of the husband's property, the wife's signature being mere surplusage and in no way invalidated the instrument as the will of the husband.

If the will now before us was not signed by appellant, it is not a joint or double will, but it is clear from the testimony that Earl M. Siple regarded it as and intended that it should be his will. He kept the writing in a drawer in a desk in his home, where it was found. He made no attempt to revoke it.

Appellant complains that her offer to show in detail at the hearing that real estate in Pennsylvania and Florida and nearly all the securities were held by her and her husband as tenants by the entireties and that decedent's individual estate consisted only of an automobile worth $1,400 and other assets of the approximate value of $690 should not have been rejected. We were of the opinion then, as we are now, that under the peculiar facts and circumstances here present the proffered testimony is not material to a decision of the issue involved. If she did not sign the disputed instrument, it is not her will. If she did sign it, her right to revoke it is not now questioned. It cannot now be effective as to her separate and individual property, nor as to property owned by her and her deceased husband at the time of his death as tenants by the entireties.

We, therefore, conclude and so find that decedent executed the writing in dispute as his will; that the will was proved in conformity with the provisions of the Wills Act of 1947, and that it was properly probated as his last will and testament.

And now, March 28, 1955, for the foregoing reasons the appeal from probate is dismissed. Costs to be paid by the estate.