GODWIN *et al.* v. GODWIN *et al.**

(Division A.   Feb. 15, 1926.)

[107 So. 13.    No. 25400.]

1. BANKS AND BANKING.   *Under statute, where deposit in name of two payable to either, bank discharged by payment to survivor (Hemingway's Code, section 3613).*

   Under Hemingway's Code, section 3613, where deposit in bank is made in name of two persons, payable to either, bank is discharged by payment to survivor of balance existing at death of the other.

2. EXECUTORS AND ADMINISTRATORS.   *One's deposit in bank, though made in name of himself and wife, payable to either, held to belong to his estate (Hemingway's Code, section 3613).*

   Hemingway's Code, section 3613, authorizing bank, in case of deposit in name of two, payable to either, to pay it to the survivor,

on death of one, being part of banking law, and not purporting to change the law on descent and distribution, while giving wife of decedent, who had his bank account changed to the name of both, payable to either, with intention that she should have the fund on his death, right to collect it on his death, did not vest her with title thereto; there having been no delivery of possession, necessary for valid gift, so that she must account therefor to the estate.

*Corpus Juris-Cyc. References; Banks and Banking, 7 C. J., p. 676, n. 14; Executors and Administrators, 23 C. J., p. 1131, n. 25.

Appeal from chancery court of Tippah county.
Hon. N. R. Sledge, Chancellor.

Trial of issue between G. J. Dean, administrator of W. F. Godwin, deceased, joined by some of decedent's heirs, and Mrs. Mary Lee Godwin, widow of decedent, and the Bank of Blue Mountain as to liability for a deposit of deceased in bank collected by the widow. Holding was in favor of the latter, and W. C. Godwin and the administrator appeal. Reversed and remanded.

*Fred B. Smith,* for appellants.

Does section 3613, Hemingway's Code, intend to change the general rule of law relative to gifts, and mean that when one deposits money in a bank to the credit of himself and another, that this act alone constitutes a valid gift of the money deposited to the other party, or was that statute merely enacted for the protection of banks?

This statute can have no effect, except to the extent which it is a protection to the bank, it cannot possibly be construed to mean that either party has a legal right to the money so deposited, on the death of the other, regardless of circumstances. It merely fixes the rights of the joint depositors and the bank, and in no way fixes the respective rights and liabilities of the joint depositors themselves.

Was there a legal gift of the money or any money to Mrs. Mary Lee Godwin? There is no proof as to just

when the account with the bank was changed from the name of "W. F. Godwin" to that of "W. F. Godwin and wife." There is absolutely no proof as to what amount was in the account at that time. If that act is the thing which constituted the gift, then only the amount on deposit at that time would have been given, and later deposits would not have been contained in the alleged gift. Mr. Godwin never relinquished his absolute control and dominion over the deposit, and never in any manner delivered the pass book evidencing the deposit to the appellee, Mrs. Godwin, but even had he done so, under the case of *Pace* v. *Pace,* 107 Miss. 296, this is not sufficient delivery. See, also, 20 Cyc. 1246 (4); *Wagoner's case,* 174 Penn. State 558, 52 A. S. R. 829; *Carradine* v. *Collins,* 7 S. & M. 438; *Wheatley* v. *Abbot,* 32 Miss. 343; *Drew* v. *Hagerty,* 81 Me. 231, 10 Am. St. Rep. 255; *Meyer* v. *Meyer,* 106 Miss. 640.

The general rule of law is clear that where a deposit is made in a bank to the joint account of the depositor and another, this alone does not constitute a gift of the money deposited. It is never effective as a gift where the original depositor retains dominion over the deposit. There must be a delivery of the deposit to the donee, and the relinquishing of dominion over it by the donor, just as in the case of the gift of any other commodity in order to constitute a valid gift. The rule is stated in 28 C. J., page 665. See, also, *Noyes* v. *Institution for Savings,* 164 Mass. 583, 49 A. S. R. 484; *Marshall* v. *Stratton,* 96 Miss. 471, and *Meyer* v. *Meyer,* 106 Miss. 640.

*S. N. Ayres,* also, for appellants.

Mrs. Mary Lee Godwin acquired no right outside the statute because generally the courts hold that such a deposit does not convey the property after death. In Ann. Cases, 1916 D, pages 520 *et seq.,* we find an exhaustive resume of the cases in point wherein they say: "The deposit of money in a bank in the names of the depositor and another is not such delivery as will make an

effectual gift of the sum so deposited to the person joint-
ly named with the depositor," citing *Dennigan* v. *Hiber-
nia Savings Bank,* 127 Calif. 137, 59 Pac. 389; *Murray* v.
*Cannon,* 41 Md. 466; *Staples* v. *Berry,* 110 Me. 32, 85
Atl. 303; *Daugherty* v. *Moore,* 71 Md. 248, 17 Am. St.
Rep. 524.

The case at bar is similar to the last named case in that
W. F. Godwin retained dominion over these funds at all
times up to his death. He not only checked on the ac-
count continuously but made deposits as well, and there
was never any specific sum subject to the claim of gift.
There was never any delivery. Therefore, we submit
that the appellee, Mrs. Mary Lee Godwin, should be
ordered to account to the administrators for this money.

*G. L. Jones,* and *Orbrey Street,* for appellees.

The only question for decision as to this appellee is
whether the deposition of money in the bank by W. F.
Godwin for his wife and giving her control over it then,
and turning over the pass book for her was a valid gift,
when so manifestly intended by him. To effect a gift of
money on deposit, whatever is sufficient to place the fund
under the donee's control so that nothing further is nec-
essary on the part of the donor to give possession is
enough. 12 R. C. L., page 946, sec. 23; 32 L. R. A. 766;
*Carradine* v. *Carradine,* 58 Miss. 286; 14 Ency. L. (2 Ed.),
page 1019.

The intent in making the deposit should control. And
the nature of the deposit is a question of intention and
that intention may be established independently of the
form of the deposit. 14 Am. & Eng. Ency. L, page 1037;
20 Cyc. page 1198. On constructive and symbolical
delivery, see 14 Am. & Eng. Ency. L. (bb) page 1021.
The trend of modern decisions is toward constructive
delivery as a declaration of gift, accompanied by means
to obtain the gift. The intent should control. 20 Cyc.
page 1199; *Carradine* v. *Collins,* 7 S. & M. 428; *Young* v.
*Young,* 25 Miss. 38; *Harmon* v. *McFarlan,* 99 So. 566.

McGowen, J., delivered the opinion of the court.

Upon pleadings duly made up in the chancery court of Tippah county, the administrator, joined by some of the heirs at law of W. F. Godwin, contended that Mrs. Mary Lee Godwin and the Bank of Blue Mountain should account to the estate for a deposit made in the Bank of Blue Mountain by the deceased, W. F. Godwin, before his death.

Some time in 1921 W. F. Godwin had his bank account changed so that it was in the name of "W. F. Godwin or Wife," and from that time until his death his account was so carried. The amount of money in the bank at the date of his death in April, 1923, was one thousand one hundred twenty-eight dollars. From the time he changed his bank account as indicated above, the ledger slips before us indicate that the account had varied, running from five hundred dollars to four thousand three hundred fifty-three dollars and sixty-three cents. Apparently basing his decision upon a construction of section 3613 of Hemingway's Code, together with the manifest intention of W. F. Godwin that his wife should have the balance of his bank account upon his death, the chancellor held that the bank and the widow were discharged.

The proof shows in this case that Mr. Godwin applied to the banker for advice as to how he might conduct his bank account so that his wife might have same at his death, and the banker advised him that, if he made the account in the manner above indicated, and gave his wife the privilege of checking on it the same as he did, it would become a joint account, and, in the event of his death, she could draw the money. Upon this, the caption of the account was changed so as to read "W. F. Godwin or Wife." Other proof in the case amply shows the intention of the decedent to so arrange this account as that his wife could have same at his death. And, while this is true, it is just as certain in this testimony that his wife exercised no act of control over this fund in the bank,

and that, from the time of the arrangement of the joint account until his death, he (the decedent) continued to exercise acts of control and ownership of the fund, drawing checks thereon, depositing amounts at different times, at one time depositing about three thousand five hundred dollars to his credit in this account, and drawing therefrom gifts to his children. The proof showed that upon his death his widow drew out the balance in the bank; that she had never drawn a check on this fund during his lifetime or exercised any act of ownership over the fund in the bank.

The precise question presented for decision here is twofold in its nature: First, was the bank discharged by the payment of the balance to the widow of the decedent after his death by virtue of the authority of section 3613, Hemingway's Code? Second, did the said section, together with the intention of the decedent in his lifetime to so fix his bank account that his wife might be able to draw and have the money on deposit after his death, vest the title to the money so drawn in the surviving consort?

The chancellor in the court below decreed that the bank was discharged and acquitted by the payment of the money to the widow under the above named section, and that the widow was acquitted and entitled to retain the money because of the manifest intention of the decedent. Section 3613 of Hemingway's Code is as follows:

"When a deposit has been made or shall hereafter be made in the name of two persons, payable to either, or payable to either or the survivor, such deposit or any part thereof or interest or dividends thereon, may be paid to either of the said persons whether the other be living or not, and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made. Any bank may pay to the nearest relative of a deceased depositor, without necessity of administration, any sum to the credit of decedent not exceeding three hundred

dollars. This section shall apply to all banking institutions, including national banks and postal savings banks within the state.''

This section, the latter part of which applies to joint deposits in a bank, appears in our law for the first time in 1914, and is a part of the chapter on banking, and does not undertake to deal with or in any wise amend our laws on descent and distribution of estates of decedents. Its main purpose was to provide for the release and discharge of a bank by the payment of a fund to the survivor of joint deposits of funds in bank, and makes no effort to amend, alter, or change in any manner the laws of descent and distribution. Under said section the payment to the surviving wife by the Bank of Blue Mountain of the amount in bank at the date of the death of W. F. Godwin was a release and discharge of the bank; the account being carried before his death under the joint name of W. F. Godwin or wife. But the wife so collecting must account to the estate notwithstanding this statute, unless there shall be a *bona-fide* gift *inter vivos* or *causa mortis.*

However clear the intention of Mr. Godwin that his wife should have this fund, it has been so repeatedly held by this court that there must be a delivery of the property intended to be donated, as to seem not to require an extended review of this question; it is so thoroughly settled.

Mr. Godwin did not surrender the control of this account to his wife, but continued, up to within a short time of his death, to exercise complete dominion over this property, and the wife never exercised any dominion over same until after his death. In this state of the case there was no such delivery and no such surrender of the control of the property on the part of the donor as to constitute a delivery. To say the least, there was only a surrender to the wife of a right to check upon this account.

In the recent case of *Johnson* v. *Grice* (Miss.), 106 So. 271, the rule as to these gifts is clearly set forth, and,

whether this shall be called a gift *inter vivos* or *causa mortis* as to this case here under review, the rule is the same, and is well stated in 28 C. J. section 92, pp. 684, 685. In the Grice case the court said: "Such gifts are distinguished from testamentary disposition, in that they are always conditional upon death, but possession of the property bestowed must be delivered to the donee and retained by him during his lifetime."

In the case of *Pace* v. *Pace,* 65 So. 273, 107 Miss. 292, this court said: "The manifest intention of Mrs. Peavey was to give H. P. Pace all she possessed at the time of her death; but mere intention to give is insufficient to perfect a gift *causa mortis.* There must be a legal delivery of the thing given, and the delivery of the bank book, with a statement that she wanted him to have all she had, was not a delivery of her claim against the bank."

We think the chancellor was in error in holding that there was a gift of this bank account by Godwin to his wife, and, although she had a right under the law to collect the money from the bank, yet the right to collect did not vest her with title, and she must account to the estate for the money so collected.

*Reversed and remanded.*