In re Lewis' Estate.

(In Banc. April 19, 1943.)

[13 So. (2d) 20. No. 35311.]

SMITH, C. J., dissenting.

Henry L. Finch, of Laurel, for appellant.

**O. M. Oates,** of Bay Springs, for appellee.

**McGehee, J.,** delivered the opinion of the court.

This is a contest between one of the married daughters of W. C. Lewis, who died intestate, and his widow, Mrs. Lula Lewis, who is the administratrix of the estate, and the case involves the question of whether a certain deposit of money in the sum of $972.47 shown to have been made at the Bay Springs Bank on December 17, 1936, "By Mr. or Mrs. W. C. Lewis," subject to check, and which amount had been increased to such an extent that there was on hand the sum of $1,183.24 at the time of the death of W. C. Lewis on May 14, 1941, should be accounted for by the administratrix as an asset of the estate or retained by her as her individual property. The litigation arose in connection with whether or not the inventory filed by the administratrix should be accepted and approved by the court as a full and correct inventory, omitting the

item above mentioned and one other. It appears that upon the presentation of the inventory to the court the same was approved as filed except as to the omission therefrom of this bank deposit and a further item of $575.58, which was being carried at the time of the death of W. C. Lewis in an account at the Commercial National Bank & Trust Company at Laurel either in his name "and" that of his wife, or in the name of W. C. Lewis "or" his wife. The contest on these two items was set for hearing at a later date and it having thereafter been conceded in open court that the money so deposited in the bank at Laurel belonged to the widow as survivor, the proof was not developed in this record as to all of the facts surrounding that transaction. The hearing proceeded as to the ownership of the said deposit in the Bay Springs Bank and upon the proof offered in support of the widow's claim thereto the court below held that the evidence was insufficient to show that the deposit belonged to her individually upon the death of W. C. Lewis, but that the same belonged to his estate and it was decreed that this money be accounted for accordingly. From this decree Mrs. Lula Lewis (Mrs. W. C. Lewis) has appealed.

To maintain the issue on behalf of the appellant she assumed the burden of going forward with the proof as to her ownership of the money in question, instead of letting the contestant meet the burden of establishing that the deposit in controversy was the property of W. C. Lewis, deceased, at the time of his death, and through whom the contestant is claiming by inheritance. At any rate, the only issue presented for decision on this appeal is whether or not the evidence offered by the widow was sufficient to show that the deposit made to the account of Mr. or Mrs. W. C. Lewis was made by him under such circumstances as to create, prima facie, a joint interest and ownership of the fund between himself and his wife with the right of survivorship, the contestant having offered no testimony to the contrary.

The cashier of the bank had no independent recollection of the circumstances under which the deposit was made on December 17, 1936, but the original deposit ticket was introduced showing that the deposit was made up of two checks drawn on the Bay Springs Bank, one for $178 and the other for $794.47, but the cashier could not testify to whom either of the checks belonged or to whom they were payable. It is not shown whether either Mr. or Mrs. W. C. Lewis had an account with the bank at the time this particular deposit was made to their joint account, nor does it appear to whom the funds belonged by which this account was later increased or who made the subsequent deposits.

When being questioned about the account the cashier was asked: "He (meaning Mr. Lewis) had control of this account, didn't he?" And his answer was: "With Mrs. Lewis yes." He was further asked: "And he could check it out, he did not have to have her there when he wanted to draw a check?" And his answer was: "No; neither did Mrs. Lewis." He was further asked: "He had full control of that account, didn't he?" And he answered: "No, sir, I don't think so." And following the death of W. C. Lewis the bank permitted his widow to draw certain checks on the account and to then transfer the balance thereof to her individual account, clearly indicating that both the bank and Mrs. Lewis understood that the money belonged to the survivor of those in whose name it had been deposited.

Although the cashier could not recall the occasion when the deposit was made in December, 1936, or the circumstances in connection with any agreement that may have been had when Mr. Lewis deposited the two checks to the joint account of himself and wife, it was shown by the testimony of Marvin Lewis, a nephew of the deceased who drove his car for him wherever he went at that time, that the witness was present in a little room behind the cashier's window where Mr. Lewis had the conversation with the cashier in the said office on the occasion when he

deposited "something over $900.00" in the bank and heard the conversation which he construed to mean that his uncle "had it fixed to him and Aunt Lula; if he died she could draw it out—either one;" that the cashier required a card to be signed that day by Mr. Lewis which was done there in the little office and that he also gave him a card to take home for Mrs. Lewis to sign and which the witness says he saw her sign and place in the mail box for return to the bank. This witness was also asked as to whether this deposit was made "so either one of them could check on it," and he answered "Yes." He was then asked "Did he make any statement or not as to whose money it was?" and answered, "It was both of them." The cashier had testified that it was customary for the bank to require such depositors to sign a signature card but that at this particular time they had no printed joint account cards payable to either or the survivor (referring to a printed form such as is set forth in the opinion of the court in the case of Stephens v. Stephens (Miss.), 8 So. (2d) 462, which was not promulgated by the State Banking Department until the year 1940), but that sometime such agreements were typewritten on the back of a signature card or written and signed with pencil. He was unable to find any such card signed by Mr. and Mrs. Lewis, but this fact did not necessarily mean that no such card had been signed, since he admittedly required a signature card to be furnished in connection with accounts at the bank and he was able to produce only the original deposit slip in connection with this account.

The appellant also introduced as a witness their son-in-law, who was the husband of the only child of Mr. and Mrs. W. C. Lewis other than the contestant, and he testified that about two weeks after this deposit was made at the bank while he was at the home of Mr. Lewis, sitting on his porch, "he told me he had some money over there on deposit at the Bank and he had the account fixed to him and his wife so either could draw it out at any time, and in case he died it would belong to his wife, and if she

died it would belong to him. He had it so they would not have to go to court with it." He was then asked, "Did he tell you of signing papers with the Bank to that effect?", and his answer was "Yes." He was further asked, "Did he undertake to tell you the contents of the papers?" He answered, "It was a slip showing it was a joint account." This witness was much confused as to the date or even the year when this conversation occurred and stated on cross-examination that he thought it was in 1940, that he would not say that it was as far back as 1936, 1937 or 1938, but that "years pass so fast now it might have been." He stated definitely, however, that it occurred inside of two weeks after the deposit was made and that the conversation took place in the presence of the wife of the witness and the appellant, and that Mr. Lewis told him about it because he wanted him to know how it had been fixed.

Whatever card relating to this joint account may have been signed by Mr. and Mrs. Lewis could not be produced before the court below and the witness Marvin Lewis did not read the card which he claims to have seen them sign.

Nevertheless, it would seem that the testimony hereinbefore set forth should be sufficient prima facie to establish the intention of W. C. Lewis to create a joint interest and ownership in praesenti between himself and his wife when opening this account at the bank, and with the right of survivorship—a necessary incident of a legal joint tenancy in the funds in question. That although the widow did not draw any checks on this account prior to the death of W. C. Lewis, the test is what she had the right to do and not merely whether or not she exercised the right. According to the uncontradicted testimony of the cashier and other witnesses hereinbefore mentioned, she had the right so to do.

We are of the opinion that the facts hereinbefore set forth are sufficient to establish prima facie the intention of Mr. Lewis to create a joint interest and ownership of the widow in this joint deposit, and that her claim to the

fund as survivor should prevail in the absence of any substantial proof to show both the fact (1) that Mr. Lewis was the owner of the funds deposited, and (2) that he established the joint account merely for convenience to enable his wife to check on the same if necessary for his sole benefit, and not with the intention of creating a joint tenancy therein.

The cases of Godwin v. Godwin et al., 141 Miss. 633, 107 So. 13, and Stephens v. Stephens, 193 Miss. 98, 8 So. (2d) 462, are cited by counsel on the question involved, the first of which is relied upon to sustain the decree of the court below and the other to reverse the same. .

In the Godwin case, supra, where the money of W. F. Godwin was deposited by him to the account of "W. F. Godwin or Wife," the theory of a joint tenancy in the deposit was neither discussed nor considered by the court, but the briefs of all of the counsel, as well as the opinion of the court, were addressed to the sole question of whether or not there had been an actual or symbolic delivery of the fund to the alleged donee under such circumstances as to constitute a valid gift in the sense that the husband had surrendered all control of the fund in such manner as one would surrender possession and control of tangible property, such as a specific chattel. In that instance, the proof disclosed that W. F. Godwin had made neither an actual nor symbolic delivery of the money in the sense of having divested himself of any further control thereof, and the court in holding that his wife was not entitled to the money as survivor predicated its decision on the authority of the cases of Pace v. Pace, 107 Miss. 292, 65 So. 273, 274, and Johnson v. Grice, 140 Miss. 562, 106 So. 271, and held that the essential requisites of a valid gift, either inter vivos or causa mortis did not exist. In the first of these two cases, it was said that: "The manifest intention of Mrs. Peavey was to give H. P. Pace all she possessed at the time of her death; but mere intention to give is insufficient to perfect a gift causa mortis. There must be a legal delivery of the thing

given, and the delivery of the bank book, with a statement that she wanted him to have all she had, was not a delivery of her claim against the bank." The credit at the bank remained in the name and under the exclusive control of the alleged donor. The court held that there was a perfected gift insofar as the two notes were concerned, but held that the bank deposit in the name of Mrs. Peavey passed to her estate at the time of her death. It will be observed that there was no joint account of money at the bank, deposited with the intention of creating a joint tenancy between Mrs. Peavey and H. P. Pace during the life of the former, with the right of the latter to check against the same, and that therefore this case had no application to the facts of the Godwin case, supra, when viewed in the light of the joint tenancy created by W. F. Godwin when he applied to the bank for advice as to how he might conduct his bank account so that his wife might have it at his death, and the banker advised him that, if he made the account in the name of "W. F. Godwin or Wife" and gave his wife the privilege of checking on it the same as he did, it would become a joint account, and, in the event of his death, she could draw the money. In the other case relied upon in the opinion to support the decision of the court in the Godwin case, supra, that is to say, Johnson v. Grice, supra, the court held that where two notes were delivered to the donee with an endorsement on the back thereof signed by the donor in the following words: "In case of my death before this note matures, I hereby transfer and assign payment of same to Willie Johnson [the donee]" it constituted a good and valid gift causa mortis because of the actual delivery made of the notes, in view of the then imminent death of the donor, but held that on the record it made no difference whether there was a gift inter vivos or causa mortis, as the result was the same under the authority of the case of Pace v. Pace, supra, since there was a completed delivery of the notes in question. Thus, it will be seen that neither did this case have any application to a state

of facts disclosing the establishment of a joint bank account under such circumstances as to create a joint interest and ownership in the deposit, and that the case was authority only on the question of what is required to be done in a gift of tangible personal property as distinguished from the gift of an interest in a credit on the books of a bank, if indeed the gift element enters into the equation at all where such a deposit is made under a contract evidencing a clear intention to create a joint interest and ownership in the fund, with the right of either party to check on the same, and where the right of survivorship follows as a necessary incident thereto.

In the case of Stephens v. Stephens, supra, relied upon by the appellant to reverse the decree appealed from, there was a written agreement filed with the bank by Mr. and Mrs. Stephens which embodied in substance the terms of the oral agreement had in the case at bar. That written agreement in the Stephens case, supra, contained a provision, among other things, to the effect that "the entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor." [193 Miss. 98, 8 So. (2d) 463.] In other words, if the court had applied the gift theory as it relates to the gift of a chattel, there was lacking the essential requisite that Mr. Stephens should have parted with all control of the fund and vested in his wife the exclusive control and possession of the same. In the Godwin case, supra, the husband entered into an oral agreement with the bank involving the same intent and purpose of the contract which was reduced to writing in the Stephens case. A written agreement not being essential to the validity of a joint tenancy sought to be created in a bank deposit made in the name of the depositor "or" his wife, there is really no vital distinction between the facts of the two cases, and there is no material difference between the facts in the Godwin case and those in the case at bar, unless such materiality exists in the fact that in the Godwin case there was a transfer of funds belonging to W. F. Godwin from his in-

dividual account to that of "W. F. Godwin or Wife," whereas, in the instant case it is not clearly shown by any substantial proof that the funds deposited belonged exclusively to Mr. Lewis. Assuming, however, that they did belong to him, such fact alone would not necessarily determine the right of his wife to claim the money as survivor under the facts of this case, as will be hereinafter shown.

In the Stephens case, supra, the court observed that "a case closely in point with the present case is Illinois Trust & Savings Bank v. Van Vlack, 310 Ill. 185, 141 N. E. 546." In that case, the Illinois court cited with approval the case of Chippendale v. North Adams Sav. Bank, 222 Mass. 499, 111 N. E. 371, 373, where Williams transferred a fund belonging to him and then on deposit in his own name and made "a new contract with the savings bank by virtue of which either he or Mrs. Worthington could draw such sums as either in their discretion chose during their joint lives, and the balance was to be withdrawn by and so was to belong to the survivor," and wherein the court said: "In such a case there is no gift of the balance upon the death of Williams. Mrs. Worthington (when she survived Williams) became the owner of the balance undrawn by virtue of the contract of deposit, and not by a virtue of a gift which took effect on Williams' death."

In 7 Am. Jur. 299, Section 425, it is stated: "It is well established that a bank account may be so created that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other. The right to make such joint deposits has generally been held not to be done away with by statutes abolishing joint tenancy and survivorship generally as they existed at common law." Also, that: "In creating a joint bank account with right of survivorship, it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' are not used; the controlling question is whether the person opening the ac-

count intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required; courts are controlled by the substance of the transaction rather than by the name given it. The creation of a technical joint tenancy effects a survivorship, and obviously where the account is expressly made payable to either or to the survivor, the right of survivorship exists.'' The text then discusses the gift, trust and contract theories, and states, among other things, that: ''If, therefore the general rule applicable to gifts, that the donor must divest himself of all power over the gift, is to be applied, it seems that the gift in such a case must fail. This is the view of some cases. The majority of cases, however, hold that if the intention of the donor is to vest a present right to share in the deposits constituting the joint account, such an act constitutes a gift that can be sustained. This is likewise true, and the transaction constitutes a completed gift, despite a reserved power of revocation.'' Numerous authorities are cited to sustain this text, and others are cited which hold that the right of the survivor to the fund must be based either upon a gift or a trust. An interesting discussion of the authorities is to be found in the annotation under the case of Goldston v. Randolph et al., 293 Mass. 253, 199 N. E. 896, in 103 A. L. R. 1117, in which annotation it is stated that: ''While a number of the recent cases sustain the right of the original depositor's beneficiary to retain the funds in a joint deposit on the depositor's death under a theory of gift or trust, a strikingly large number rely on a theory of joint tenancy, i. e., that the form of the deposit creates a joint tenancy therein, with a right of survivorship in favor of one party on the death of the other. This is due to a great extent to statutes which have become fairly common, originally intended to protect banks in honoring withdrawals by one of two joint depositors on the other's death, providing that deposits made in the names of the depositor and another, with words of survivorship; shall

be considered the property of both as joint tenants. In view of these late decisions, some arising under such statutes and some not, it is questionable whether it may any longer be safely said that the only theories under which a transfer of title to funds originally owned by one person and deposited in an account in the names of such person and another can be sustained are theories of gift or trust. Some of the later cases seem to rely exclusively on the deposit contract between the bank, the donor, and the donee, in upholding the latter's right to a joint deposit on the depositor's death."

Section 3809, Code of 1930, provides that: "When a deposit has been made or shall hereafter be made in the name of two persons, payable to either, or payable to either or the survivor, such deposit or any part thereof or interest or dividends thereon, may be paid to either of the said persons whether the other be living or not, and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made." Even though it be considered that the statute is intended only for the protection of the banks, nevertheless it has the effect of recognizing or sanctioning the practice of accounts being carried in such manner, and such authority so conferred upon the banks is evidently founded on the presumption that the parties intended that the fund should be paid to the survivor. In 9 C. J. S., Banks and Banking, page 595, sec. 286, it is said: "In the absence of contrary evidence, a presumption created by statute is sufficient to establish the rights in, or title to, the deposit in the survivor. The survivor's right to withdraw the balance is acquired in praesenti and is irrevocable after the death of the other depositor." It is true that such a statute does not change the law of Descent and Distribution, and that any presumption arising therefrom as to the joint ownership of the fund with the right of survivorship may be overthrown by proof of a contrary intention, as for instance, where the joint account is made merely for convenience to enable the

wife, or other person whose name is added, to check on the same for the benefit of the husband or other owner, as distinguished from an intention to create a joint interest and ownership with the right of survivorship. It is often the case that where the depositor desires to make an agreement with his bank for the convenience of having another check on the account for his or their joint needs, he has the funds remain on deposit in his own name under instructions that checks drawn by such other person thereon be honored.

A joint ownership of a deposit is created when it clearly appears to have been the intention of the original owner to divest himself of the exclusive ownership and control of the money and vest such ownership and control jointly in himself and another with the attendant right of survivorship. The intention to make a present gift of a joint interest in such deposit may appear in the statement of the depositor to the bank, or it may be shown by his accounts and the attendant circumstances. A change of a bank deposit standing in the name of an individual, to the joint account of the depositor and another, may operate as a present and completed gift in joint ownership if the original depositor clearly intended such a result, and the gift of an interest in the deposit, though not ripening into full ownership until the death of the donor, is not testamentary in character but creates a joint tenancy therein if the depositor intended to vest a joint interest and ownership in such other person in praesenti when establishing such joint account; and it is immaterial in such case whether the fund originally belonged exclusively to the depositor or belonged to him and the other jointly. The fact that the funds may have belonged to the depositor at the time such a deposit is made is persuasive in determining whether he opened the joint account merely for convenience to enable the other person to check on the same for his benefit or intended to create a joint tenancy therein, but such fact of sole ownership by the depositor is not conclusive of the right of survivorship

in a deposit made under such circumstances. In the case of Splaine v. Morrissey, 282 Mass. 217, 184 N. E. 670, 671, where it appeared that deceased had his bank accounts transferred from his name to the joint name of himself and his wife, it was said: "We interpret the findings of the judge to mean that the deceased made a present gift to his wife, not of the deposits themselves but of such interests therein as are implied from the terms of the deposit upon which they were held by the banks. Such a gift could be effected in accordance with the principle applied in the case of Chippendale v. North Adams Sav. Bank, 222 Mass. 499, 111 N. E. 371 . . ." And, as heretofore shown, the principle applied in the Chippendale case, supra, was that the person whose name was added when the deposit was changed from the name of Williams, who owned the money, to the joint account was that the person whose name was added "became the owner of the balance undrawn by virtue of the contract of deposit, not by virtue of a gift which took effect on Williams' death;" that is to say, the rights of the co-beneficiary were not dependent upon whether Williams had surrendered complete control of the fund during his lifetime, but rather upon the contract whereby he had established a joint tenancy in the fund during their joint lives, with the balance to be withdrawn by and belong to the survivor. Moreover, it is obvious that for a depositor to surrender the exclusive control and possession of a deposit made in his name and that of another would be wholly inconsistent with the theory of a joint tenancy therein and with the purpose to be served by establishing a joint account. We therefore conclude that the rights of the parties under the facts of the Godwin case, supra, and those in the case at bar cannot be determined merely by the fact of whether or not the essential requisites of a valid gift of tangible personal property must appear in the sense that the depositor surrendered the exclusive possession and control of the fund to the person whose name is added to the account; that the Godwin case was

incorrectly decided on the actual facts involved; that such decision should be and it is hereby overruled insofar as it may be deemed an authority for holding that the survivor is not entitled to the funds where the deposit was made under such circumstances as those involved in that case and in the case at bar; and that, therefore, the decree of the court below should be reversed and judgment rendered here for the appellant, Mrs. Lewis.

Reversed and judgment here for the appellant.

DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

If the chancellor was correct in holding that the money here deposited with the Bay Springs Bank belonged, when deposited, to W. C. Lewis, and I am not prepared to say that he erred in so holding, this case is ruled by Godwin v. Godwin, 141 Miss. 633, 107 So. 13, which case should not be overruled for two reasons: (1) It was correctly decided, and, if not, (2) no mischief of any consequence results from it.

One of the essential elements of a gift of personal property is the delivery, actual or symbolic, of the property to, and its acceptance by, the donee. It is not essential that the donor deliver the property himself to the donee, he may deliver it to another to be given the donee, who may make the actual delivery unless his authority so to do is revoked by the owner of the property. The deposit of money in a bank by the owner thereof in the name of another without more is insufficient to constitute a gift thereof to the one in whose name the money was deposited. Smith v. Taylor, 183 Miss. 542, 184 So. 423. This remains true although the bank is authorized to permit the one in whose name the deposit is carried to check on it, the right so to do remaining also in the one who made the deposit, for in that event the depositor has not surrendered his control over the deposit. Under such circumstances a gift to the person in whose name the deposit is

carried becomes complete only to such portion of the deposit as the bank may deliver to him before its authority so to do is revoked by the one who made the deposit. Such is the case here. All I have here said is so elementary that no authority is necessary therefor, but if the Godwin case was wrongly decided, no mischief results from it for the reason that if two persons wish to carry an account in a bank in both of their names, subject to the check of either, with the right of survivorship, all they will have to do is to sign one of the bank joint account cards referred to in the opinion in chief and approved in Stephens v. Stephens, 193 Miss. 98, 8 So. (2d) 462, a very simple and easy thing to do.