STEWART *v.* TUCKER.

4-7626                                        188 S. W. 2d 125

Opinion delivered April 30, 1945.

*Murphy & Wood,* for appellant.

*Jay M. Rowland,* for appellee.

ROBINS, J. This is a controversy as to ownership of lot 14 of C. S. Williamson's Subdivision of Hot Springs, Arkansas, and certain household goods, which were owned during her lifetime by Mrs. Cordelia Wilson Tucker. Appellant, daughter of Mrs. Tucker, asserts title by reason of the provisions of the last will and testament of Mrs. Tucker, who died August 1, 1942. Appellee, Garnet Tucker, claims title by inheritance from his adoptive father, Frank H. Tucker, who died October 6, 1942.

The real estate, consisting of lot with six-room dwelling house thereon, was bought by Thomas Murray Wilson and Cordelia Wilson, his wife, from J. O. Sutton and Beulah Sutton, his wife, on January 8, 1934, for the sum of $1,300, of which $10 was paid, and promissory note for $1,290, payable in monthly installments of $10 each, was executed by Thomas Murray Wilson and his wife to the Suttons for the balance of the purchase money. J. O. Sutton died and his wife became the owner of the property. Thomas Murray Wilson and his wife, Cordelia, separated; she secured a divorce from Wilson and he transferred to Cordelia Wilson his interest in the real estate and household goods. Cordelia Wilson married Frank H. Tucker, adoptive father of appellee, Garnet Tucker, on February 10, 1938. Apparently no children resulted from this marriage, but Cordelia Wilson Tucker was survived by appellant, Frances Nadine Stewart, and two other children by a former marriage. On February 14, 1942, Cordelia Wilson Tucker executed a will by which

she bequeathed the personal property involved herein, and devised all real estate owned by her to appellant. This will has been duly probated. After the death of Mrs. Cordelia Wilson Tucker her husband, Frank H. Tucker, sent an affidavit to Mrs. Sutton, in which he stated that he and his wife had an agreement under which he was to pay out the real estate and, in event his wife should predecease him, it should belong to him. Relying on this affidavit, Mrs. Sutton, upon payment to her by Tucker of $230 remaining unpaid on the contract of sale, executed a deed to Frank H. Tucker.

Appellant brought suit in the lower court against appellees, Garnet Tucker and H. A. Tucker (not related to the parties to this suit), administrator of the estate of Frank H. Tucker, alleging that the property belonged to her as her mother's devisee and praying that Frank H. Tucker be declared a trustee of the title for her and that the title be vested in her. Appellant also prayed for an accounting for rents. Appellees in their answer denied that appellant had any interest in the property and alleged that, upon the death of Cordelia Wilson Tucker, her husband, Frank H. Tucker, became the owner thereof by reason of a contract entered into by Cordelia Wilson Tucker and Frank H. Tucker ''to the effect that Frank H. Tucker make the payments on the said house and lot and to which property the survivor should be entitled.''

The chancery court found ''that the said property was held as an estate by the entirety by Frank H. Tucker, and Cordelia Wilson Tucker, his wife, deceased, and that the said Frank H. Tucker, deceased, acquired the entire property upon the death of his wife''; and rendered decree dismissing appellant's complaint for want of equity. To reverse this decree appellant prosecutes this appeal.

The only testimony tending to establish the existence of the written agreement relied on by appellees was that of the administrator of the estate of Frank H. Tucker, deceased, who testified that he dictated the agreement to his stenographer and that it was transcribed in triplicate—one copy for Frank H. Tucker, one copy for his

wife, and one copy for Mrs. Sutton, who had contracted to sell the property—and that it was signed by Frank H. Tucker and his wife in his office. It does not appear that Mrs. Sutton ever received a copy of this agreement, although a copy was said to have been prepared for her. Appellees in their answer did not set up the existence of a written agreement, but merely referred to it as "a contract and agreement," and Frank H. Tucker, in the affidavit sent by him to Mrs. Sutton in order to obtain the deed, did not state that he had a written agreement signed by his wife, but merely stated that he had an agreement with her. No copy of the agreement was introduced in evidence, nor was the testimony of the stenographer, who was said to have transcribed it on the typewriter, taken. It is earnestly insisted by appellant that the testimony is not sufficient to establish the existence of this agreement, and furthermore, that, since the witness who testified as to drawing up the agreement was the administrator of Frank H. Tucker's estate, his testimony was incompetent, but, in the view we take of the effect of the alleged agreement, we do not deem it necessary to pass on the sufficiency or competency of the evidence adduced to establish the existence of it.

It is undisputed that all the property involved herein originally was the sole property of Mrs. Tucker. The only witness who testified as to the existence of the agreement by which it is sought to show that the title to this property was transferred to Frank H. Tucker, testified that under its terms "he (Frank H. Tucker) would continue making the payments on this contract or articles of agreement for deed; and that, if he should die before his wife, then the property . . . should be hers according to the contract; and if she should die before he died, he would have the property." It was not alleged that the agreement was acknowledged or witnessed. Not having been witnessed the agreement could not be probated as a will.

This rule is laid down in 33 C. J. 907: "In order to have a joint tenancy, there must coexist four unities: (1) Unity of interest. (2) Unity of title. (3) Unity of time.

(4) Unity of possession. That is, each of the owners must have one and the same interest, conveyed by the same act or instrument, to vest at one and the same time . . . and each must have the entire possession of every parcel of the property held in joint tenancy as well as of the whole.''

In the case of *Hershy* v. *Clark,* 35 Ark. 17, 37 Am. Rep. 1, there was involved the construction of a contract executed by two brothers, who were tenants in common of a large amount of real and personal property, by which contract, it was provided ''that the survivor of them should have, hold and possess, all the interest of both parties in the property, real and personal, which they then owned, to the exclusion of all other persons. . . .'' The court, referring to this contract, said: ''It professes to convey nothing *in presenti,* and can not stand as a conveyance; nor can it be upheld as a mutual covenant. . . . Whether, if properly proven, it might not have operated, on the contingency of the death of one of them, as his *separate* will, is a question which does not arise, and upon which we intimate no opinion.'' It was held in that case that, upon the death of one of the brothers, his interest in the property owned by him and his surviving brother passed, under the law of descent and distribution, to the heirs of the deceased brother, and that the agreement executed by the brothers was ineffectual to create an estate by the entirety.

The Supreme Court of Michigan, in the case of *Pegg* v. *Pegg,* 165 Mich. 228, 130 N. W. 617, 33 L. R. A., N. S., 166, Ann. Cas. 1912C, 925, had to construe a deed executed by Davis Pegg to Mary C. Pegg, his wife. By this deed, which contained the usual covenants of warranty, the husband conveyed to his wife an undivided one-half interest in 160 acres, and there was inserted between the granting and the habendum clauses the following language: ''The object and purpose of this deed is to convey to said second party such an interest in said land that the parties hereto will have an estate in entirety, and that the same shall survive and vest in the survivor as a full and complete estate.'' After the deed was executed

and recorded the grantor died. The widow asserted a claim, resisted by grantor's children, to the entire estate as survivor. The Michigan court, in denying the right of the widow to the entire estate, said: "In order to own the whole, as survivor, she would have to be seized of the whole before his death. Whatever vested in her as survivor must have been owned by both her and her husband before his death, and each must have been seized of the whole. As neither one was seized of the whole, but both held by distinct titles, they could not have been tenants by the entirety. Neither were they tenants by entirety of the undivided half conveyed to her, because Davis Pegg reserved no interest in the undivided half he conveyed to complainant. The deed as a whole cannot be construed as creating a tenancy by entirety, because the law was not followed in creating it. At the common law, the unities of time, title, interest and possession had to be observed in creating such an estate. Blackstone, Commentaries, book 2, p. 182; Washburn on Real Property, vol. 1 (6th Ed.), p. 529. See suggestion in *Bassett* v. *Budlong,* 77 Mich. 338, 43 N. W. 984, 18 Am. St. Rep. 404. The common law has remained unchanged in this respect and is now in force. In the attempt to create an estate by entirety, in the case under consideration, neither the unity of time nor title was observed. The estate was not created by one and the same act, neither did it vest in them at one and the same time. . . . By reason of these considerations, the deed must be read as though the 'clause' had been omitted. The deed created a tenancy in common between complainant and her husband, and upon his decease his undivided one-half of the premises descended to his heirs.''

The common law of England (except where it is inconsistent with our constitution and statutes) has been put in force in this state by the General Assembly. Section 1679 of Pope's Digest. Under the common law, as pointed out in *Pegg* v. *Pegg, supra,* such an agreement as the one relied on by appellees is not sufficient to create an estate by the entirety, as to the real and personal property of Cordelia Wilson Tucker, in Cordelia Wilson Tucker and her husband, Frank H. Tucker, as contended

by appellees, and as held by the lower court. No statutory enactment has changed the rule of the common law and it must control here. We conclude that the lower court erred in holding that the alleged written agreement entered into between Frank H. Tucker and his wife, Cordelia Wilson Tucker, was sufficient to create in Frank H. Tucker and his wife an estate by the entirety as to the property involved herein.

While Frank H. Tucker made payments on the property before the death of his wife, these payments must be held to be gifts to his wife; and the payment made after her death was made by him as a volunteer—since upon the death of his wife testate he had no interest, by reason of his relationship with her, in her property. Section 4422 of Pope's Digest of the laws of Arkansas, as amended by Act 313 of the General Assembly of Arkansas, approved March 15, 1939, and by Act 69 of the General Assembly of 1943, approved February 19, 1943. A stranger to a title acquires no lien by way of subrogation, in making purchase money payments. *Nichol* v. *Dunn*, 25 Ark. 129; *Turley* v. *Gorman*, 133 Ark. 473, 202 S. W. 822.

The evidence as to improvements made by appellees on the real estate involved herein and as to the amount of rent and taxes paid by appellees does not appear to have been fully developed. Accordingly the decree of the lower court is reversed and this cause is remanded with directions to the lower court to enter a decree vesting title to the real estate and personal property involved herein in appellant, subject, first, to a lien on the real estate in favor of appellees for the reasonable value of the improvements made on said property by appellees, plus the amount of all taxes on said property paid by appellees, less the reasonable value of the rent of said property during the time appellees have been in possession thereof, the value of said improvements, and amount of said taxes and rent to be determined from testimony already taken and such additional testimony as the parties may see fit to offer, and subject, second, to the right of the executor or administrator of the estate of Cordelia Wilson Tucker, deceased, to sell same, or such portion thereof as may

be necessary, in the manner provided by law, for the payment of probated claims against her estate.

Robins, J., on rehearing. A careful re-examination of the record convinces us that appellees' contention that the proof in this case does not justify a finding that appellant was entitled to the household goods described in the complaint must be sustained in part.

While all the household goods for which appellant sued were particularly described in the will of Mrs. Cornelia Wilson Tucker, mother of appellant, appellant's allegation that her mother owned this personal property was denied by appellees in their answer. Thus the burden of proving that this property belonged to appellant's mother was cast upon appellant.

The only testimony supporting appellant's claim to the household goods is contained in the following portion of appellant's deposition: "To the best of my knowledge it (the personal property) was all hers; because I know that Mr. Tucker gave her the Frigidaire for her birthday, and the bedroom suite in the front bedroom, which was bought after her marriage to Mr. Tucker, was paid for partly by trading in some of her old furniture." It thus appears that the only articles which appellant identified and showed to have been owned by her mother were the one suite of furniture and the Frigidaire. As to the other articles of household goods there is no evidence to prove that appellant's mother ever owned them. This testimony of appellant was not specifically contradicted.

So we conclude that our former opinion and judgment should be so modified as to vest in appellant title to the real estate involved and to the bedroom suite in the front bedroom and the Frigidaire, subject to the provisions of our former opinion as to improvements, taxes and rents and the rights of the administrator of the estate of Cordelia Wilson Tucker.

In all other respects the petition for rehearing is denied.