POWELL *v.* POWELL.

5-252                                          263 S. W. 2d 708

Opinion delivered January 18, 1954.

*Oscar Fendler,* for appellants.

*Taylor & Sudbury* and *Claude F. Cooper,* for appellees.

GRIFFIN SMITH, Chief Justice. Ownership of a deposit in Farmers Bank and Trust Company at Blytheville is the subject of this appeal.

S. F. Powell died April 6, 1952. A son, Lee, died December 5, 1951. Lee was survived by his widow, Zouline, and Waelon, a 19-year-old son. S. F. Powell

was survived by his widow, Almedia, and by two sons and a daughter: Ernest and Lawrence Powell, and Gracie Powell Bishop. At the time of his death S. F. Powell was "85, 86, or 87" years of age. Almedia was his fourth wife. They married August 30, 1947.

The controversy revolves around a bank signature card executed December 29, 1951, at a time when Powell's balance in his checking account was $11,599.62. At death his balance was $10,828.48. In addition to the checking account Powell had a time deposit of $2,000, and owned $5,000 in bonds. Neither the time deposit nor the bonds is an issue here.

The evidence discloses that at various times Powell had executed wills, but would become dissatisfied and destroy them.

On December 29 Powell went to the bank and talked with its president, B. A. Lynch. Effect of testimony given by Lynch is that Powell desired to convert the checking account into a joint tenancy with right of survivorship. Act 260 of 1937; Ark. Stat's, § 67-521. Language of the statute is that "When a deposit shall have been made by any person in the name of such depositor and other person, and in form to be paid to either of them, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants," with survivorship rights. The Act's title defines the rights of parties "in bank deposits in *two* names," and § 1 mentions "another person" (singular) and refers to "either of them." Here the deposit was not originally *made* by Powell in his and another's name, but assuming, without deciding, that unrestricted directions to the bank to permit designated persons to check against the balance and to take the remainder following the depositor's death meet the statutory requirements, still in the case at bar we are met with Powell's express directions to Lynch limiting the rights of Almedia and Ernest Powell to any balance

that might remain after the principal depositor's death. [See marginal note No. 1 for directions to the bank].[1]

The signature card reads: "Title of account, S. F. Powell, Almedia Powell, W. E. Powell." These names were inserted by Lynch, and the three authorized signatures are appended. But to the right of these signatures, with a bracket cutoff, there was written: "After death of S. F. Powell."

Collateral facts tending to show intent are these: On the day the card was signed Powell and Almedia executed two warranty deeds. One conveyed 50 acres to Ernest, with a reservation that the grantee pay rent to Almedia during her lifetime; the other conveyed 40 acres to E. L. Powell and Gracie Powell Bishop as tenants in common, subject to a life estate in the grantors. A further provision was that if Gracie Bishop should predecease S. F. Powell, her rights would vest in E. L. Powell.[2]

A decree in Waelon's favor was predicated upon factual findings that S. F. Powell did not intend to relinquish dominion over the deposit until after death and that a trust was not established. While Lynch was certain that survivorship had been discussed and that Powell expressed a desire to have the account altered to accomplish that end, the printing copied in Marginal Note No. 1 was not read to him, and Lynch did not know whether Powell read it. A fair inference is that he did not. A high probability is that Powell expected to retain

[1] On one side of the card relied upon by appellants the printed heading is, "Joint Account—Payable to Either or Survivor." Beneath this heading the wording is: "We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account, or any part thereof, may be withdrawn by, or upon the order of, either of us or the survivor. S. F. Powell, Almedia Powell, W. E. Powell."

[2] After notifying Farmers Bank not to permit Ernest and Almedia Powell to withdraw any of the money, the original suit was filed by Zouline Powell, Lee's widow, and Waelon's mother. They named as defendants W. E. Powell, Almedia Powell, and Farmers Bank & Trust Co. James Terry, administrator of the estate of S. F. Powell, intervened.

the money as his own while living, but in the meantime desired an arrangement whereby his wife and Ernest could draw checks for his use. This conclusion is reinforced by the fact that after the card was signed neither Ernest nor Mrs. Powell utilized the account for individual purposes. Checks were written by Ernest, but all were signed "S. F. Powell," by Ernest, etc., and were for debts or purchases personal to S. F. Powell.

Act 260 was no doubt intended primarily for the protection of banks, for § 1 concludes, ". . . and such payment and the receipt and acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by one of such joint tenants not to pay such deposit in accordance with the terms thereof."

Consonant with our own decisions, the chancellor found that four essentials must be present in the creation of a joint tenancy: unity of interest, unity of title, unity of time, and unity of possession. *Stewart* v. *Tucker,* 208 Ark. 612, 188 S. W. 2d 125. Mr. Justice Robins quoted certain language that the court approved, then said: "Each of the owners must have one and the same interest, conveyed by the same act or instrument, to vest at one and the same time, . . . and each must have the entire possession of every parcel of the property held in joint tenancy as well as of the whole." The same requisites are emphasized in *Burns* v. *Nolette,* 83 N. H. 489, 144 A. 848, 67 A. L. R. 1051.

There is abundant evidence that either before or shortly after the last will was destroyed by Powell he stated that his intentions were to have all of the children share in his estate. Almedia testified that on December 27, when her husband first mentioned his purpose to make deeds to the realty, he said in effect: "As to my money, I am not going to do anything about that. I have one porch to fix and improvements to make and will spend the biggest part of it." She added, however, that Powell had said that when he got through with the

improvements he would leave the money to his wife and Ernest.

Ernest was not present when his father signed the deposit card, but when he (Ernest) affixed his signature and returned to the automobile where his father and stepmother were, the former said, "That is the way I want my money to go after my death." The bank president testified that Powell commented: "If I get to where I can't attend to business; Mrs. Powell and Ernest can attend to it for me." A factual finding was that Lynch did not, in his first testimony, recall whether anything was said about the right of survivorship; there was no lengthy discussion and "Powell did not indicate to [Lynch] that he wanted anything else, other that they could take care of the business if he couldn't."[3]

Appellants rely upon *Pye* v. *Higgason,* 210 Ark. 347, 195 S. W. 2d 632, insisting that the facts in that case and those here are so similar that no practical distinction can be drawn. Judge McHaney's opinion cited *Black* v. *Black,* 199 Ark. 609, 135 S. W. 2d 837, where it was held that a bank deposit in the joint names of husband and wife became the property of the widow as surviving tenant by the entirety, independent of Act 260 of 1937. But the Black case went further and said that the statute was not limited to deposits of husband and wife, "but applies to joint deposits of any two persons, and was, we think, passed for the protection of the bank in which the deposit was made."

In the Pye case an account was maintained in the Commercial Loan & Trust Company as shown in the fourth footnote.[4] It will be observed that there was no qualifying language, such as the restrictions directed by Powell to be placed upon the signature card.

[3] Quoted from the Chancellor's opinion.

[4] The direction was: "Below please find duly authorized signatures which you will recognize in payment of funds or the transaction of other business on my account. We, R. P. Pye and Miss Lill Higgason, have opened up a checking and savings account with the Com. L. & T. Co. These accounts are opened in this manner, R. P. Pye, and Miss Lill Higgason, payable to either of them and in the event of death payable to the survivor. It is our purpose to create an estate of entirety and we authorize this said bank to consider these two accounts as same."

*Burks* v. *Burks,* 222 Ark. 97, 257 S. W. 2d 369, comments on the trend of modern decisions to make a check the basis of a gift *causa mortis* where creditors are not concerned and where payment would carry out the unrevoked wishes of the donor. It was also said that where all of the testimony, and an indorsement on the check itself, disclosed an intent upon the donor's part that at the instant of death the money on deposit represented by the check should pass to the payee, effect should be given to such express wishes and to the factual transaction. In that case the check was a setting aside of the amount indicated, and there could be no doubt regarding the donor's purpose.

Even where statutes similar to Act 260 are in effect, some courts have declined to permit the established law of descent and distribution to be invaded where the lawmakers had not affirmatively shown an intent to alter existing rights. In *Godwin* v. *Godwin,* 141 Miss. 633, 107 So. 13, W. F. Godwin had his account changed so that it was in the name of "W. F. Godwin or Wife." The evidence showed that Godwin applied to the banker for advice as to how he might conduct his account so that his wife might have the balance remaining to his credit at death. The banker advised him (pursuant to § 3613 of Hemingway's Code) that if he made the account in the manner heretofore indicated and gave his wife the privilege of checking on it, it would become a joint account; and, in the event of the husband's death, proceeds would pass to the wife.

The court held that when the bank paid the money to Mrs. Godwin it was discharged, but she was accountable to the estate. Said Mr. Justice McGowen in writing the opinion: "The section [of the statutes], the latter part of which applies to joint deposits in a bank, . . . is a part of the chapter on banking, and does not undertake to deal with or in any wise amend our laws on descent and distribution of estates of decedents. Its main purpose was to provide for the release and discharge of a bank . . . However clear the intention of Mr. Godwin that his wife should have this fund, it

has been so repeatedly held by this court that there must be a delivery of the property intended to be donated, as to seem not to require an extended review of this question.''

Our own cases, however, (where two persons were concerned) have held that such a relationship may be created with the right of survivorship. But the intent must be clear and free from inconsistent restrictions.

In view of the testimony of numerous witnesses who had heard Powell say he intended that his children should share equally in his property, the fact that he directed Lynch to restrict the account, the understanding of Mrs. Powell that her husband was ''not going to do anything about the money''; Ernest's actions in signing his father's name to checks and in applying the funds to his father's affairs,—these and other facts and circumstances disclosed confused purposes of a character justifying the chancellor in reaching the conclusions he did.

Affirmed.

GEORGE ROSE SMITH, J., concurring. I concur for the reason that S. F. Powell, by directing that the joint bank account be ineffective until his death, undertook to retain complete title to the account until his own death. The arrangement was therefore testamentary and fails for noncompliance with the statute of wills.